MADISON METROPOLITAN SEWERAGE DISTRICT, Petitioner, v. STEIN, Respondent.

*No. State 5. 1970. (Advanced to August Term, 1969.) Argued May 1, 1970.—Decided June 2, 1970.*
(Also reported in 177 N. W. 2d 131.)

350

For the petitioner there was a brief by *Petersen, Axley, Brynelson & Herrick,* and oral argument by *Eugene O. Gehl,* all of Madison.

For the respondent there was a brief and oral argument by *Francis Lamb* of Madison.

A brief amicus curiae was filed by *Cohen, Grant, Crooks, Parins & Liebmann* and *Meyer M. Cohen,* all of Green Bay, for the Green Bay Metropolitan Sewerage District.

A brief amicus curiae was filed by *Richard A. Lehmann* of Madison, on his own behalf.

BEILFUSS, J. The parties have agreed the following issues are before the court:

1. Does the curative act violate the state constitutional prohibition of special laws by legislating for a closed class?

2. Does the curative act violate the state constitutional prohibition of special laws respecting the assessment and collection of taxes?

3. Does the curative act create a viable municipality when the predecessor statutes dealing with the formation of such districts have been declared unconstitutional?

4. Does the legislature have the authority to declare district boundaries that were initially unconstitutionally created?

It appears that an overview analysis of the case resolves the matter into a principal issue: Is the curative act a "general" or "special" law? The constitutional provisions with which we are concerned are found in art. IV, section 31, 6th and 7th:

"The legislature is prohibited from enacting any special or private laws in the following cases:
"  .  .  .
"6th. For assessment or collection of taxes or for extending the time for the collection thereof.
"7th. For granting corporate powers or privileges, except to cities."

On April 1, 1969, in *In re City of Fond du Lac, supra,* this court held that the statutory [1] procedure for creation of metropolitan sewerage districts insofar as they required the county court's policy determination that the goals of the statutes would be "best served by the creation of a district" constituted an unlawful delegation of legislative authority to the judiciary. It was said in *In re City of Fond du Lac,* at page 330:

"Clearly the statute involved here purports to delegate to the county court a question which is not factual. What is 'best' or 'should not be' are political questions and not questions of fact."

The court further held that the determination of boundary lines by the lower court fell under the same constitutional disability.

---

[1] Secs. 66.20 to 66.209, Stats.

At the time of the decision in *In re City of Fond du Lac* there were three such districts in existence in Wisconsin. We can say herein, with assurance, that the court recognized the need for such districts and only condemned those parts of the statutes which delegated legislative responsibility to the county court.

In response to *In re City of Fond du Lac, supra,* the legislature adopted ch. 132, Laws of 1969.[2] This act, which became effective August 2, 1969, purported to validate as lawfully organized districts all metropolitan sewerage districts which had been organized under ch.

[2] "Chapter 132, Laws of 1969

"AN ACT to create 66.20 (3) of the statutes, relating to the validation of metropolitan sewerage districts.

"The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:

"66.20 (3) of the statutes is created to read:

"66.20 (3) VALIDATION. (a) Every metropolitan sewerage district as it is constituted as of the effective date of this subsection (1969), including all territory annexed to such district, which was attempted to be organized under chapter 442, laws of 1927, and amendments thereto, and purporting to exist on the effective date of this subsection (1969), shall be a lawfully organized district and shall have the same powers as provided for in ss. 66.20 to 66.209, and every such district is declared to be legal and the district to be duly organized.

"(b) Each sewerage district validated under this subsection shall recognize and assume as a condition precedent to continued operation hereunder all of the obligations, liabilities, contracts, bonds, grants and conveyances of the metropolitan sewerage district organized under chapter 442, laws of 1927, and amendments thereto, and purporting to exist on the effective date of this subsection, and upon such recognition and assumption of all such obligations, liabilities, contracts, bonds, grants and conveyances, the same shall constitute legal and binding obligations of such validated district. All taxes and special assessments previously levied or collected by such metropolitan sewerage district organized under chapter 442, laws of 1927, and amendments thereto, and purporting to exist on the effective date of this subsection (1969) are declared to be valid taxes and special assessments of the validated district."

442 of the Laws of 1927,[3] and existing on the act's effective date, with the same powers as provided in secs. 66.202 to 66.209, Stats. The act further provided as a condition precedent to continued operation that the districts had to assume the obligations and liabilities, etc., of the prior invalid organizations. The previous tax levies and assessments were also declared valid as of the act's effective date.

The general recognition of curative acts to validate political subdivision organizations is observed in 2 Sutherland, *Statutory Construction* (3d ed.), pp. 141, 142, sec. 2217:

"The corporate existence and the legislative and administrative acts of municipal corporations, including cities and towns, school districts, drainage districts, townships and counties may be validated by properly enacted curative statutes. Because there is apparent legislative cognizance of the fact that most political subdivisions must be administered by personnel unfamiliar with the intricacies of the law, and because courts generally afford liberal interpretation to action taken for the public benefit, there is a mutual legislative and judicial willingness to forgive, forget, and legalize. Only in case the curative act attempts to validate that which could not have been originally authorized, or to validate action which impairs the obligation of contracts or interferes with created rights will courts declare the statute unconstitutional."

The respondent's principal argument is that the entire curative act, ch. 132, Laws of 1969, is invalid as a "special law" under art. IV, sec. 31 of the Wisconsin Constitution. The burden of proof, beyond reasonable doubt, is on the respondent to convince the court this legislative act is repugnant to the constitution. The applicable standards for statutory construction under constitutional challenge were enumerated in *In re City of Beloit* (1968), 37 Wis. 2d 637, 643, 155 N. W. 2d 633:

---

[3] Secs. 66.20 to 66.209, Stats., were created by ch. 442 of the Laws of 1927, and amendments thereto.

". . . we hasten to add that in this day of restless technical and social change this court is alert to the necessity of guarding against a well-meaning fusion of judicial and legislative power. We start with the basic principles of constitutional law and statutory construction: (1) That the statute must be presumed to be valid and constitutional, 2 Sutherland, *Statutory Construction* (3d ed.), pp. 326, 327, sec. 4509; *A B C Auto Sales, Inc. v. Marcus* (1949), 255 Wis. 325, 38 N. W. 2d 708; *White House Milk Co. v. Reynolds* (1960), 12 Wis. 2d 143, 106 N. W. 2d 441; and (2) if a statute is open to more than one reasonable construction, the construction which will accomplish the legislative purpose and avoid unconstitutionality must be adopted. *Attorney General v. Eau Claire* (1875), 37 Wis. 400; *State ex rel. Harvey v. Morgan* (1966), 30 Wis. 2d 1, 139 N. W. 2d 585; *Gelencser v. Industrial Comm.* (1966), 31 Wis. 2d 62, 141 N. W. 2d 898. Of course, the court cannot give a construction which is unreasonable or overlook language in order to sustain legislation, but likewise the construction need not be the most natural or obvious. See *State ex rel. Reynolds v. Sande* (1931), 205 Wis. 495, 238 N. W. 504."

Moreover, the general rule indicates that curative legislation is entitled to liberal construction favoring its validity. It is said in 2 Sutherland, *Statutory Construction* (3d ed.), p. 138, sec. 2214:

"Most curative acts should be liberally construed for as a rule the acts affect important public interests and are enacted to further public benefits in health, welfare, and morality. Some courts have asserted that when the intent of the act was to achieve a result which would be recognized in a court of equity a greater presumption of validity should attach to the act and its construction should be liberal."

There can be no question but that metropolitan sewerage districts fall in this category.

Turning now to a consideration of whether the validation act, ch. 132 of the Laws of 1969, is a special act prohibited by art. IV, sec. 31 of the Wisconsin Constitution, or a proper general act, we quote *State ex rel. La Follette*

*v. Reuter* (1967), 36 Wis. 2d 96, 111, 112, 113, 153 N. W. 2d 49:

"Since its creation in 1871, and its amendment in 1892, art. IV, sec. 31, has been applied to a wide and divergent variety of cases. The sweeping gamut of this section has inevitably resulted in a construction of what is meant by 'special or private legislation' on a case-by-case and act-by-act analysis. Consequently, the historical objectives and purposes of this section are important because, necessity has demanded the evaluation of many different acts and policies during the development of the state.

"*Kimball v. Rosendale* (1877), 42 Wis. 407, 415, discussed the original constitutional amendment of 1871 which became art. IV, sec. 31, of our constitution:

" 'It is impossible to mistake the object or spirit of this amendment. For years, the statute books had been encumbered with multitudinous acts of the several kinds prohibited; vicious not only in quantity but in quality. In some of the instances prohibited, they meddled in purely private matters; authorizing what might be done without the authority or with judicial authority. In other instances, they conferred special authority in cases within general authority. And in all instances relating to things *publici juris,* they broke the uniformity and harmony of law so essential to good government; substituting special for general rules, and rendering a large body of the municipal law fragmentary in character, and different by locality. After long endurance of such excesses of legislation, the amendment of 1871 was adopted; in order, so far as it went, to confine legislation to its legitimate objects, to substitute general for special enactments, and to restore order and uniformity to municipal law. And we cannot doubt that, except so far as power over any of the nine several subjects is reserved by other provisions of the constitution, the amendment was intended to withdraw them, and does effectually withdraw them, from any exercise of legislative authority over them, by private or special statutes. . . .'

"In determining the constitutionality of a particular statute, as it relates to this section of the constitution, the courts have been motivated by such polar factors as curing the abuses which prompted the original 1871

amendment and the overwhelming desirability of the particular statute then under consideration.

"Furthermore, this court has repeatedly held that repugnance between a legislative act and the express provisions of the constitution must be clear and irreconcilable before a statute will be held invalid. See *Madison Metropolitan Sewerage Dist. v. Committee* (1951), 260 Wis. 229, 50 N. W. 2d 424."

In a discussion of state constitutional provisions similar to the one here in question, the following contrast is drawn between general and special laws:

"A law is special as opposed to general if, by reason of some intrinsic limitation on its scope of application, it is *arbitrarily* made to apply to some particular thing, location, person or group of persons and thereby grants privileges or imposes burdens which, but for the limitation, would apply to a larger class, each member bearing the same relationship to the subject matter of the law in question. More specifically, a law pertaining to municipalities is special if, by reason of its being made applicable to a particular municipality or group of municipalities, it *arbitrarily* grants privileges or imposes burdens upon less than all the municipalities to which the particular law would naturally apply in the absence of the limitation. Thus, legislation made applicable on its face to a named city, or to a group of cities identified by their population or by some other named characteristic, is potentially special, depending upon whether or not the particular restrictive characteristic is deemed to be arbitrarily selected." [4]

The early stated Wisconsin rule is very similar, as set forth in *Johnson v. Milwaukee* (1894), 88 Wis. 383, 390, 60 N. W. 270:

"It is not required that all general laws shall be equally general. A law legislating for a class is a general law when it is for a class 'requiring legislation peculiar to itself in the matter covered by the law.' A law relating

---

[4] John M. Winters, *Classification of Municipalities*, 57 Nw. U. L. Rev. (1962), 279; *see also:* 2 McQuillin, *Municipal Corporations*, p. 98, sec. 4.55.

to particular persons or things *as a class* is said to be general; while a law relating to particular persons or things *of a class* is deemed special and private. Whether such laws are to be deemed general laws or special laws depends very much upon whether the classification is appropriate. (Emphasis supplied.)

The court, in *Johnson, supra,* proceeded to list four rules for determining the propriety of a classification: (1) All classifications must be based on substantial distinctions which make one class really different from another; (2) the classification must be germane to the purpose of the law; (3) the classification must not be based on only existing circumstances; and (4) the law must apply equally to each member of the class.

It is argued the validating act adopted here creates a closed class of municipal corporations because no more districts can be added to the class and thus it amounts to special legislation based solely on existing circumstances.

In *Boyd v. Milwaukee* (1896), 92 Wis. 456, 66 N. W. 603, an act validating certain contracts by cities of the first and second class was held unconstitutional because the law attempted to cure past irregularities and could apply only to Milwaukee.

Relying on *Boyd v. Milwaukee, supra,* and cases following it,[5] this court discussed the phenomenon of legislating for a "closed class" in *White Construction Co. v. Beloit* (1926), 189 Wis. 5, 8, 206 N. W. 908:

"But if the class be closed so that no cities in the future can grow into it, then it violates the constitutional provisions mentioned under the rulings in the cases first cited. It needs no analysis of the alleged curative act relied upon in this case to show that the cities there described

[5] *See Burnham v. Milwaukee* (1897), 98 Wis. 128, 73 N. W. 1018; *Cawker v. Central Bitulithic Paving Co.* (1909), 140 Wis. 25, 121 N. W. 888; *Neacy v. Drew* (1922), 176 Wis. 348, 187 N. W. 218.

constitute a class that is irrevocably closed by facts existing at the time the act was passed. It is immaterial whether there be two, three, or more cities so circumstanced as to come within its provisions. It is the closed condition of the class that renders the act invalid. If that be true as to an act which includes all the cities in a class, it is all the more true of an act that includes only a part of the cities of a class. The argument that the legislature can validate what it could do in the first instance is true, but it does not apply because the legislature in the first instance could not lawfully create a closed class."

The respondent puts considerable reliance on the *Boyd* line of cases culminating in *Federal Paving Corp. v. Prudisch* (1940), 235 Wis. 527, 293 N. W. 156, a case which dealt with a statute authorizing a city council to pay for work done prior to a certain date pursuant to illegal contracts. The scheme of other statutes precluded the application of the act to cities of the first class, though it appeared on its face applicable to all cities. The court stated that if an act applied to all cities, even if factually some cities could not come within its terms, no discriminating attempted classification had been made. It was further said, at page 537:

"The *White Construction Company Case, supra,* represents the considered judgment of this court upon facts so nearly parallel to this as to leave no escape from the conclusion that a curative act, which validates past transactions or permits recognition of liability on the basis of pre-existing facts, must be made applicable to all municipalities if it is to escape condemnation as a special act. Any other conclusion would require departing from a well-established rule and overruling well-considered cases. This we are not inclined to do, although as an original proposition there is much to be said for the contention that having created a proper classification of cities, curative acts applicable to a class or classes should not be treated as creating a subclassification or *a fortiori* a closed class."

Subsequent to the decision in *Federal Paving Corp. v. Prudisch, supra,* the legislature adopted another curative act to apply to "any city of whatever class," [6] but in other respects essentially the same as the act in question in the *Federal Paving Corp. Case.* That statute was challenged in *State ex rel. Federal Paving Corp. v. Prudisch* (1942), 241 Wis. 59, 4 N. W. 2d 144. This court upheld the second curative act and said, at page 64:

"Applying these conclusions to sec. 66.295, Stats. 1941, which under its terms is applicable to 'any city of whatever class,' the circumstance that in some cities there may be no factual situation as to which the statute can be operative in that there have been no improvements furnished 'under any contract which shall have been heretofore declared as imposing no legal obligation on any such city' does not disclose an attempted classification. In so far as by reason of that provision the statute can become operative and applicable only in cases where there are such past factual situations, the provision merely defines the subject matter upon which the law may act and does not create any classification. Any city, which has a factual situation bringing it within the law, can take advantage of it in the future, provided that it existed at the time the law became effective. Thus, there has been completely removed, and the 1941 statute is not subject to, the objection because of which the 1939 enactment was declared invalid."

Petitioner relies on an analogous set of cases respecting a curative act validating defectively organized villages in Wisconsin. The case of *In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 67 N. W. 1033, invalidated the statutory scheme for incorporating villages upon a policy determination of the circuit court that such incorporation would promote the "interest of the inhabitants." The case held such an imposition of duties on the judiciary to be an unlawful delegation of legislative authority, a holding squarely in line with the decision in *In re City of Fond du Lac, supra.*

[6] Ch. 272, Laws of 1941.

Subsequent to the *Village of North Milwaukee Case,* the legislature adopted a curative act providing that:

". . . All villages heretofore incorporated under and by virtue of any general act, particularly under the provisions of chapter 52, of the revised statutes of 1849, chapter 70, of the revised statutes of 1858, or chapter 40, of the revised statutes of 1878, and all acts amendatory thereof, and all villages organized under special laws, which have heretofore attempted to reorganize under any general law of this state, including the acts above particularly referred to, or which have organized under such attempted incorporation, and have acted as villages in attempted pursuance of the acts mentioned or any general law of this state, and all alterations of their boundaries, and additions thereto are hereby declared to be, and to have been duly and lawfully incorporated, made or adopted, and such villages shall possess, and there is hereby conferred upon them with such enlarged or diminished boundaries, all the franchises, rights, powers, privileges and immunities conferred by any of the acts above mentioned, to the same extent as though the said acts had been fully and completely valid. . . ." [7]

The validating act above quoted was challenged in *Town of Winneconne v. Village of Winneconne* (1901), 111 Wis. 13, 86 N. W. 590. In holding the act not in violation of the constitutional prohibition of special laws, the court said, at pages 15, 16:

"Doubtless there existed a large number of supposed villages which had been organized under the laws referred to in the act, and hence there can be no doubt but that the act itself, being an act applicable to a class, was, under very familiar principles, frequently stated by this court, a general law, because applicable to a class."

The court further held the act was not retroactive, but merely created the villages as of the effective date of the curative statute.

[7] Ch. 5, Laws of 1897.

The petitioner, district, argues the analogy of the *Winneconne Case* is squarely on point with the instant case. It is asserted that ch. 132, Laws of 1969, applies to all metropolitan sewerage districts which had attempted to organize under secs. 66.20 to 66.209, Stats., as a class, and therefore the curative act is general, not special. It is our opinion the *Winneconne Case* as well as the *Federal Paving Corp. Cases* dictate a curative act applied to all members of a class of municipalities is general in nature and thus not violative of art. IV, sec. 31 of the Wisconsin Constitution.

The argument is made that the class is closed and the curative act therefore "special." *Schintgen v. La Crosse* (1903), 117 Wis. 158, 94 N. W. 84, considers this problem. That case dealt with a curative act applied to cities created under special charters, a method no longer available for city organization when the act was passed. In holding that such a group of cities was a class by itself and the statute that had been passed was therefore general, the court said, at page 166:

"It is further objected that the law, so far as pertains to past assessments, is void because it is improper class legislation and hence is a special or private law for the assessment of taxes and within the inhibition of sec. 31, art. IV of the constitution. In this contention, reliance is placed upon *Boyd v. Milwaukee,* 92 Wis. 465, 66 N. W. 603. It is entirely possible that the reasoning of that case may be subject to just criticism, but whether it be good law or not we are well convinced that it does not control this case, in which a law general in its terms and applicable to every city in the state operating under a special charter is attacked. It has already been held that cities operating under special charters are *ex necessitate* a proper constitutional class and subject to legislation as such. The question of classification is therefore no longer open. The law applies to the entire class, and the fact that all the cities in the class may not be in a situation to make use of its provisions does not make it special or private."

The problem presented by curative acts as applied to classes in existence at the time of enactment in such cases as *Winneconne, Schintgen* and the instant case has been discussed as follows in an analysis of the labyrinth of Wisconsin authority on the subject:

". . . the courts should recognize that the legislation necessarily limits the group of cities to which it can apply, because only cities with past defects can benefit from a statute seeking to cure defects prior to a particular day. The class is in this sense closed because no cities can enter into an invalid contract yesterday. This latter objection, however, should not be fatal, because curative acts necessarily apply only to past defects." [8]

It can be argued that the instant case of metropolitan sewerage districts is closed because no more districts can be admitted in the same fashion as the present three. However, under the doctrine of *Schintgen* and *Winneconne,* that does not prohibit ch. 132, Laws of 1969, from being considered a "general" law. It applies to all members of the class and not to one or some members of the class.

Petitioner is correct in asserting that the questions of special taxes and boundaries are completely dependent upon the determination of whether the act is from an overall view, general or special. If the curative statute had dealt only with taxing authority, then the language of *State ex rel. Turner v. Bell* (1895), 91 Wis. 271, 275, 64 N. W. 845, would apply:

"It was there [9] said that the sixth and seventh clauses of the section must be construed together, so as not to make them conflict, and because the legislature might, under the seventh subdivision, amend a city charter and change or confer corporate powers, such a law was not

---

[8] *Winters, supra,* footnote 4, at page 290. *See also:* Lawrence J. Bugge, *Wisconsin Municipal Indebtedness,* 1964 Wis. L. Rev. 549, 589, 590.

[9] *Warner v. Knox* (1880), 50 Wis. 429, 7 N. W. 372.

void because it provided for the levying of a tax to carry such powers into effect. . . . The act under consideration does not attempt to confer any rights or powers save the power to levy a tax. It puts an end to the drainage commission for all purposes, save that it keeps it alive for the single purpose of levying a tax. It must be held a special law for the assessment and collection of a tax, and so in conflict with the constitution and void."

Thus, it is clear the issues in the instant case must be construed together as the constitutional provisions are construed together.

In *Town of Winneconne v. Village of Winneconne, supra*, at pages 16 and 17, the court said:

"But there is another consideration which seems decisive of the present case. The legislature has plenary power to provide for the organization of cities and villages by general law. Const. art. XI, sec. 3. It may, in the exercise of such power, attach such conditions or obligations to the grant of municipal powers and privileges as it sees fit, and may compel the recognition and assumption of obligations not binding in law, but which are just and equitable in their character. *Guthrie v. Territory ex rel. Losey*, 1 Okl. 188, 21 L. R. A. 841. It is to be noted that this is not the case of an attempt by the legislature to *compel existing* municipal corporations to pay obligations and levy taxes against their will. *State ex rel. McCurdy v. Tappan*, 29 Wis. 664. The law in question is a law which, in substance, creates municipal corporations where there were none before, and which, as a part of the act of creation, provides that they shall pay certain obligations supposed to have been duly incurred by the voluntary and unauthorized bodies to whose property they succeed. The assumption of the obligations is simply a condition attached to their corporate existence. It is not necessary for us to enter into any discussion of the vexed question as to the power of the legislature to compel an existing municipal corporation to pay obligations not previously binding upon it. This question has received attention in *Hasbrouck v. Milwaukee*, 13 Wis. 42, and *State ex rel. McCurdy v. Tappan, supra*. There was no corporation prior to the act. The legislature created one, and by the same act endowed it with the

property and property rights of a pre-existing voluntary organization, and required it to pay the just debts and obligations of that organization. We can see no objection, from any point of view, to this legislation."

We conclude that ch. 132, Laws of 1969, construed as a whole, is a general law and, as such, valid under the Wisconsin constitution.

We further conclude that when the Madison Metropolitan Sewerage District on September 8, 1969, adopted a resolution whereby it recognized and assumed all the obligations, liabilities, contracts, bonds, grants and conveyances as a condition precedent to continuous operation, it became a valid viable district capable of continuing its operations, including the proposed connections with the systems of the villages of DeForest and Waunakee.

Mr. Richard A. Lehmann has filed a brief amicus curiae. The subject matter of his brief is important and well prepared; however, his arguments more properly should be directed to the legislature or the arm of the legislature which may exercise some degree of control over these sewerage districts.

A brief amicus curiae was also filed by Mr. Meyer M. Cohen on behalf of the Green Bay Metropolitan Sewerage District.

This brief requests that the court include the following points in its decision:

"1. Existing metropolitan sewerage districts organized under Section 66.20 et seq., Wis. Stats., were validly organized.

"2. The officers of such districts are duly appointed and have the power to issue bonds and levy taxes.

"3. Their successors may be duly appointed and when so appointed will have similar powers.

"4. Annexations of additional territory to such districts are valid when based upon the stipulation of the parties involved."

We believe that our opinion does include answers to points (1) and (2). As to point (3), by way of *dicta,* we deem that sec. 66.203, Stats., which provides for the appointment of commissioners, imposes a ministerial and not a legislative duty upon the judge of the county court and, as such, is not an unlawful delegation of legislative power. The inquiry of point (4), likewise, is not before us and we decline a comment.

*By the Court.*—The petition for a writ of mandamus is granted; and a declaratory judgment granted adjudging that ch. 132 of the Laws of 1969, which creates sec. 66.20 (3), Stats., is a valid enactment.