ANTHONY S. EARL Governor
Your June 5, 1985, letter requests my opinion as to the validity of certain provisions of 1985 Assembly Bill 85 (the budget bill). In my opinion the provisions would be valid if enacted into law.[1]
Your letter states:
 The proposal would impose upon the internal operations of the Wisconsin Higher Education Corporation (WHEC), a corporation organized under Chapter 181 of the Wisconsin Statutes, certain restrictions that would not be imposed upon any other Chapter 181 corporation in this state.
While undoubtedly WHEC would be the only corporation presently affected by the legislation and while the proponents of the proposal unquestionably are motivated by a desire to better oversee WHEC specifically (the legislative history refers exclusively to WHEC), the proposed legislation nowhere mentions WHEC; rather, it applies to a class of nonstock corporations defined as "public purpose corporations," of which class. conceptually, WHEC is but one member. *Page 170 
Chapter 181, Stats., is entitled "Nonstock Corporations." Section 2054m of AB 85 amends chapter 181 to create section 181.79, entitled "Public Purpose Corporations." defined as "any corporation organized under this chapter to provide for a guaranteed student loan program." Provisions are made for the appointment, compensation and removal of board members and the chief administrative officer of the corporation. In addition, section 181.79 subjects the corporations to state purchasing, travel expense, employe compensation, ethics and audit requirements. Sections 148m and 153m of AB 85 would add public purpose corporations to the list of entities covered by the open records law and open meetings law, respectively.
I.
You first ask whether these provisions violate section 31, clause 7 or section 32 of article IV of the Wisconsin Constitution. In my opinion, they do not.
Consideration of this question is subject to several well-established rules of statutory construction. A statute will be upheld if there is any reasonable basis for the classification made. Messner v. Briggs and Stratton Corp., 120 Wis.2d 127, 137,353 N.W.2d 363 (Ct.App. 1984). To defeat the proposed legislation, an opponent would have to demonstrate beyond a reasonable doubt that it is repugnant to an express provision of the constitution; the conflict must be "clear and irreconcilable." State ex rel. La Follette v. Reuter,36 Wis.2d 96, 113, 153 N.W.2d 49 (1967). If the legislation is open to more than one reasonable construction, the construction which will accomplish the Legislature's purpose and avoid unconstitutionality must be adopted. Madison Metropolilan [Metropolitan]Sewerage Dist. v. Stein, 47 Wis.2d 349, 357, 177 N.W.2d 131
(1970). Finally, "[i]t is elementary that if the statute appears on its face to be constitutional and valid, [the supreme court will] not inquire into the motives of the legislature . . . ."State ex rel. Thomson v. Giessel, 265 Wis. 558, 564,61 N.W.2d 903 (1953).
The provisions in question provide, in pertinent part, as follows:
 The legislature is prohibited from enacting any special or private laws in the following cases: *Page 171 
 7th. For granting corporate powers or privileges, except to cities.
Wis. Const. art. IV, sec. 31.
 The legislature shall provide general laws for the transaction of any business that may be prohibited by section thirty-one of this article, and all such laws shall be uniform in their operation throughout the state.
Wis. Const. art. IV, sec. 32. The proposed legislation grants no powers or privileges to public purpose corporations; rather, it imposes regulations upon them.[2] The simple response to your first question, therefore, is that the Legislature's proposal is outside the clear and explicit words of the constitutional provisions, so that even if it were to be construed as a special or private law, it is not the kind of special or private law prohibited by the constitution. Assuming, nevertheless, that the Legislature's proposal were to be construed as granting corporate powers or privileges, it still is not prohibited by article IV, sections 31 and 32 of the Wisconsin Constitution.
In State ex rel. Wisconsin Dev. Authority v. Dammann,228 Wis. 147, 194-96, 277 N.W. 278 (1938) (on rehearing), the court considered whether an act granting the Wisconsin Development Authority (a corporation organized under general corporation statutes)
 the privileges, (1) of access to records of the public service commission; (2) of commanding the public service commission to obtain further information; (3) of having the governor command any officer, agent, or employee of the state to give assistance or advice; and (4) of having the secretary of state audit certain of its accounts . . . violate[d] sec. 31, art. IV. . . .
Id. at 194. The court stated:
 [I]t is only a privilege inhering in the corporate charter as part of the corporation's organic act that is within the provision in sec. 31, art. IV, Wis. Const., prohibiting the granting of corporate powers or privileges by special act. In In re Southern Wisconsin *Page 172 
 Power Company, supra, the court said, with reference to a franchise to construct a dam (p. 257):
 "While the franchise here granted was a legislative grant, it was not a corporate power or privilege within the meaning of sec. 31, art. IV, of the constitution. If such a franchise were granted to a corporation it would become its property, but would not be essential to its corporate existence. The clause prohibiting the granting of corporate powers or privileges simply prohibits the grant of corporate charters by special act. A franchise is not essentially corporate, and it is not the grant of a franchise that is prohibited by the constitution, but the grant of a corporate franchise."
 It follows that if in any of the above respects any power whatever was vested in the Wisconsin Development Authority the power was not a corporate power in the sense referred to in the constitutional provision.
Id. at 195. The proposed regulations are no more privileges inhering in any corporation's charter as part of the corporation's organic act than were the provisions enacted with respect to the Wisconsin Development Authority.
Assuming that the proposed legislation was deemed to confer powers or privileges and was deemed to be part of the corporation's charter, it still is not constitutionally prohibited. In my opinion, it is not special nor private and, even if it is deemed to be so, the Legislature can properly single out for regulation entities like WHEC.
As already stated, nothing in AB 85 mentions WHEC. Chapter 181, a general law governing nonstock corporations, would be amended to provide for a class of nonstock corporations known as "public purpose corporations." All of the proposed regulations would apply to this class. While WHEC presently is the only existing corporation organized under chapter 181 to operate a guaranteed student loan program, the fact that at the time of a particular enactment applicable to a class, there is only one member thereof, does not militate against the validity of the legislation. Adams v. The City of Beloit and others,105 Wis. 363, 81 N.W. 869 (1900); accord, State ex rel. Thomson v.Giessel, 265 Wis. 185, 197-98, 60 N.W.2d 873 (1953). A "public purpose corporation" is "any corporation organized under [chapter 181] to provide for a guaranteed *Page 173 
student loan program." Nothing in chapter 181 would limit the freedom of any person or persons to organize a corporation for this purpose.[3] Nothing in section 39.33, authorizing the Higher Educational Aids Board ("HEAB") to organize a guarantee corporation, can be read to block anyone else's freedom to do the same. Thus, as far as state law is concerned, the public purpose corporation is a conceptually valid classification. It does not "preclude addition to the members included within" it, State exrel. Risch v. Trustees, 121 Wis. 44, 54, 98 N.W. 957 (1904), and thus is not a closed class.[4]
One might contend that only one guarantee entity in each state is contemplated by the federal laws governing the guaranteed student loan program, such that, even if promoters could organize a competing corporation under state law and could find lenders with whom to do business, the federal government would not contract with the competing corporation because one guarantor already was operating in that state. I find no legal support for such a contention.
The statutes and rules governing the essential provisions of the federal guaranteed student loan program — guarantee payments, advances for reserve funds, interest subsidy payments, payments of administrative costs — all contemplate the possibility of multiple non-governmental guarantee entities within a single state. e.g., Title 20 U.S.C. §§ 1072 (a)(1), (c)(6)(A); 1078 (b)(1)(K), (c)(1)(A), (f)(1) and 1078-1(a);34 C.F.R. Part 682.
I understand that private guarantors organized in other states do business with Wisconsin lenders in competition with WHEC. I see no reason why other private guarantors organized in this state could not do likewise. Such other guarantors, if organized under chapter 181,[5] would be public purpose corporations and thus as subject to the proposed legislation as WHEC.
Having concluded that the legislation would create a class of corporations, and not just regulate WHEC, the question remains *Page 174 
whether the classification is valid. There are four rules for determining the propriety of a classification under article X, section 31 of the Wisconsin Constitution.
 (1) All classifications must be based on substantial distinctions which make one class really different from another; (2) the classification must be germane to the purpose of the law; (3) the classification must not be based on only existing circumstances; and (4) the law must apply equally to each member of the class.
Stein, 47 Wis.2d at 360. The proposed legislation satisfies all four rules.
There are substantial distinctions between public purpose corporations and other corporations, for-profit and non-profit alike. Public purpose corporations are conceived as guarantors of loans to post-secondary students under a federal program providing for interest subsidies, special financial inducements to lenders, reserve fund subsidies and, most significantly, federal reinsurance. No other class of corporations possesses these characteristics.
While there is no statement of legislative purpose in the proposal, the legislative history amply reveals that the classification is germane to the purpose of the legislation. The purpose of the legislation, as distinct from the motive to regulate WHEC, appears to be the improvement of legislative oversight over entities providing student loan insurance. The proposed classification, embracing WHEC and any other entity like WHEC, is germane to that purpose, since it (the classification) contains the essential characteristics of WHEC and any other entity which might come to exist.
The classification is not based only on existing circumstances. AS already observed, a classification is valid even though only one member presently exists as long as others can aspire to membership. At any time, another corporation like WHEC could come into being and become a public purpose corporation subject to the same special regulation as WHEC.
Finally, the proposed legislation clearly applies equally to each member of the class; all public purpose corporations are subject to all of the requirements of the proposal.
Even if one or more of the four criteria for a valid classification were deemed to have been violated, and, therefore, the proposed legislation were deemed to apply only to WHEC, it is still constitutional. *Page 175 
If the Legislature chose to, it could regulate WHEC by name and not create special or private legislation contrary to the constitution.
In reaching this conclusion, I have had to reevaluate an earlier formal opinion which concluded that "the Legislature could not single out [WHEC] for special enactments concerning its internal affairs. . ." 72 Op. Att'y Gen. 135, 138 (1983). This conclusion was based upon perceived distinctions between WHEC and other "private corporations" on the one hand, and public authorities, such as the Wisconsin Housing and Economic Development Authority, on the other hand. After reviewing the supreme court's pronouncements regarding legislative control over entities specially created outside the government to carry out a public purpose, including corporations, and in light of recent dramatic changes in the relationship between the state and WHEC, I have concluded that WHEC can be regulated by particular legislation applying to it alone, as long as other constitutional provisions are observed.
The state has the power to create separate entities designed to indirectly carry on a public purpose which the state cannot carry on because of constitutional restrictions. State ex rel. Warrenv. Nusbaum, 59 Wis.2d 391, 425, 208 N.W.2d 780 (1973). The state has exercised this power many times and in a variety of ways with no clear pattern. Some entities are or have been denominated authorities,[6] such as the Wisconsin Housing and Economic Development Authority. Others have been denominated corporations, such as the so-called "dummy building corporations." Still others are or have been denominated authorities but were or are corporations, e.g., the Community Development Finance Authority, chapter 233, and the Wisconsin Economic Development Authority.Dammann, 228 Wis. 147.
Recently enacted is legislation, 1985 Wisconsin Act 26, creating the "Bradley Center Sports and Entertainment Corporation," *Page 176 
which is a chapter 181 corporation, like WHEC, but which resembles more closely an independent authority.[7]
WHEC was organized by a state agency (HEAB) under general corporation laws. This device has been used before. The Educational Communications Board organized the Wisconsin Public Broadcasting Foundation.[8] The Building Commission organized the Wisconsin State Public Building Corporation, the Board of Regents organized the Wisconsin University Building Corporation, the Wisconsin Federal Surplus Property Development Commission organized the Wisconsin Federal Surplus Property Development Corporation and the Wisconsin Turnpike Commission organized at least one turnpike corporation. Herro v. Wisconsin Fed. Surp. P.Dev. Corp., 42 Wis.2d 87, 166 N.W.2d 433 (1969); State ex rel.Thomson v. Giessel, 267 Wis. 331, 333, 65 N.W.2d 529 (1954);Thomson v. Giessel, 265 Wis. at 196; State ex rel. WisconsinUniv. Bldg. Corp. v. Bareis, 257 Wis. 497 501. 44 N.W.2d 259
(1950).[9]
The State Historical Society, now denominated both a "body politic and corporate" and "an official agency and trustee of the state," section 44.01 (1), was chartered specially by the Legislature in 1853[10] as a corporation and was reorganized a century later (by the society itself) under chapter 181. 42 Op. Att'y Gen. 333 (1953).
The State Medical Society, was specially chartered by the Legislature in 1841, but later given "the general powers of a corporation." State Medical Society v. Comm. of Insurance,70 Wis.2d 144, 147, 233 N.W.2d 470 (1975).
A myriad of other private entities carrying out public purposes was identified in Dammann, 228 Wis. at 172, 178: the State Horticultural Society, the Wisconsin Horse Breeders' Association, the Wisconsin Agricultural Society, Memorial Hall, Wisconsin Department of Grand Army of Republic, Wisconsin Department of Spanish War Veterans Associations, to name a few. *Page 177 
It is apparent that the state has chosen many different devices to carry out proper governmental functions. In a number of cases, the legislation relating to those devices has been upheld under the constitutional provisions prohibiting special or private laws. In Barczak, 34 Wis.2d at 74-75, the court upheld section 59.071, authorizing the creation of local industrial development corporations. In Thomson v. Giessel, 267 Wis. at 341-42, the court upheld the creation of the Wisconsin State Public Building Corporation. In Nusbaum, 59 Wis.2d at 428, the court upheld the housing authority. Finally, in Wisconsin Solid Waste RecyclingAuth. v. Earl, 70 Wis.2d 464, 488, 490, 235 N.W.2d 648 (1975), the court upheld the former solid waste recycling authority.
Of importance in Barczak and Giessel, was the fact that the corporations were organized under general corporation laws. WHEC was organized under chapter 181, a general corporation law. The proposed regulations are amendments to that general law and so are valid.
In Nusbaum and Earl, the authorities were not organized under general corporation laws but the legislation was still upheld.
 Art. IV, sec. 31, Wisconsin Constitution, was not meant to deny the legislature the authority to grant limited corporate powers to the entities it creates to promote a public and state purpose. Ch. 234, Stats., does not involve the promotion of private or local interests, as condemned by the framers of sec. 31, but a legitimate governmental and statewide purpose as declared by the legislature. Ch. 234 is not objectionable as either a special or private law.
Nusbaum, 59 Wis.2d at 448.
 In Nusbaum this court held that the Housing Finance Authority was created in order to promote public and state purposes rather than private or local interests and, therefore, the Housing Finance Authority Act did not contravene these constitutional provisions.
. . . .
 . . . We agree that Nusbaum is controlling here, since the Recycling Authority, no less than the Housing Finance Authority, involves a legitimate governmental and statewide purpose, rather than a special or private purpose. *Page 178 
Earl, 70 Wis.2d at 488, 490 (footnotes omitted).
"The purpose of [article IV, section 31] is to insure that legislation will promote the general welfare and further statewide interests, as opposed to private concerns." La Follettev. Reuter, 36 Wis.2d at 113. WHEC, no less than the housing authority and the recycling authority, involves a legitimate governmental and statewide purpose — the provision of a guaranteed student loan program — rather than a special or private purpose. The proposed legislation, therefore, is constitutional under Nusbaum and Earl.
Other private but governmentally-created corporations have balked at legislative control in the past. In State MedicalSociety, the society — a state-chartered corporation — tried to convert its WPS division into a chapter 611 domestic insurance corporation. The decision of the court is strong authority for the Legislature's right to regulate special corporations.
 The society was incorporated in the year 1841 pursuant to Laws of 1841, Bill No. 53, ch. 2, sec. 1. Later statutes contained provisions for SMS to be continued with the general powers of a corporation.
 Petitioner SMS contends that it is not "a unique organization," as assessed by the trial court. It finds little distinction in being a nonprofit association, holding a charter from the state and being cloaked with the general powers of a corporation. Whatever the number of entities which might be found to exist under each category, suffice it to say, that it is a rare organization that possesses all three attributes plus a history of statutory enactments reaffirming its existence and granting it special powers. . . .
. . . .
 There is no basis . . . for SMS to deny that it is unique and charged with a public interest.
State Medical Society, 70 Wis.2d at 147-48, 149.
Further authority for the Legislature's right to control corporations exercising public purposes is found in Thomson v.Giessel, 265 Wis. 185. The claim there was that turnpike corporations, organized by the State Turnpike Commission, were themselves state agencies because routes had to be approved by the highway commission and the Governor and that when their bonds were retired *Page 179 
the roads would become state property. These restrictions, the court held, "do not make a turnpike corporation a state agency. The legislature has declared that the purpose to be served by the construction of the toll road is a public purpose. It is only proper that its construction be subject to the approval of the state highway commission and the governor." Thomson v. Giessel,265 Wis. at 196.
Other precedents exist for legislative regulation of particular state-created corporations. Just as board membership of public purpose corporations would be regulated by the proposed legislation, the members of the boards of the Wisconsin University Building Corporation and the Wisconsin Public Broadcasting Foundation are limited by statute. Bareis,257 Wis. at 501; sec. 39.12 (4), Stats. In State ex rel. Warren v. Reuter,44 Wis.2d 201, 216, 170 N.W.2d 790 (1969), the court found not only a right, but a duty to regulate private corporations receiving public funds:
 The question of reasonable regulations for control and accountability to secure the public interest is one of degree and depends upon the purposes, the agency and the surrounding circumstances. Only such control and accountability as is reasonably necessary under the circumstances to attain the public purpose is required. Budgeting and auditing are, of course, basic and necessary controls; additional types of control vary with the demands or requirements of the circumstances. What would be sufficient control for daily operations may not serve for capital improvements and vice versa. What controls may be necessary for an agency to be formed may not be necessary for an agency which has been operating for many years and has established an acceptable policy and is under regulations and control of other governmental bodies. Likewise, controls which are sufficient today for this appropriation may not be sufficient tomorrow under different circumstances.
I understand that WHEC receives no public funds except as consideration for services rendered. Nevertheless, as guidelines for the permissible scope of government regulation of private entities performing public purposes, the above-quoted language is instructive.[11] Within reasonable limits, I believe that WHEC and entities like WHEC are subject to legislative oversight in the public interest. *Page 180 
In addition to the state's general interest in promoting public well-being by regulating governmentally-created corporations, the state has a particular relationship with WHEC by virtue of the language of section 39.33 and WHEC's relationship with HEAB and the student loan revenue obligation bond program.
Under section 39.33 (1), HEAB was authorized to organize and "maintain" a guarantee corporation. Thus, the state has the responsibility to see that WHEC remains in existence. It is reasonable to conclude that the duty to maintain WHEC carries with it a right. if not a duty, to regulate its affairs that would not necessarily exist with respect to just any corporation.
Another particular aspect of the state s relationship with WHEC provides a reasonable basis for the proposed legislation. The state has issued $215,000,000 of Student Loan Revenue Obligation Bonds to finance its operations as a lender under the guaranteed student loan program. All loans made with bond proceeds have been guaranteed by WHEC. The board and WHEC are parties to the Corporation Reserve Agreement, setting out certain rights and obligations by both parties to secure the integrity of the bonds and the program itself. As long as any bonds are outstanding, the state has a special interest in the operations of WHEC.
Finally, throughout its history, WHEC has in other ways played a unique role in the performance of the state's duties under the guaranteed student loan program,[12] justifying more precise legislative oversight than might otherwise be the case. HEAB has statutory authority to furnish administrative services to WHEC. Sec. 39.33, Stats. By contract, the state has obligated itself to do so. This obligation is a covenant with bondholders. Thus, by virtue of its responsibilities to bondholders, the state is intimately concerned in the operations of WHEC.
In recent months WHEC's relationship with the state has become even more intimate. I understand that, by contract, WHEC now provides administrative services to HEAB, including the servicing of loans made by private lenders. By assuming the responsibility of administering the lender servicing program — one of *Page 181 
HEAB'S major statutory responsibilities, section 39.33 (10)[13]
— WHEC has subjected itself to a reasonable degree of legislative control. It is my further understanding that 174 of 193 HEAB employes now work for WHEC under contract with HEAB. This unusual state of affairs is further evidence of WHEC's special status.
The legislative history reveals that there is concern that WHEC is considering making major expenditures, for a building and a computer, out of its insurance reserve fund. Report from the Legislative Fiscal Bureau to the Joint Finance Committee, May 10, 1985. The state is justified in legislating to preserve the integrity of insurance reserves. The insurance code (which would apply to public purpose corporations, being insurers) is replete with regulations to protect consumers of insurance. WHEC's reserve fund is of special concern to the state because WHEC'S operations are part and parcel of a special government program.
In summary, the proposed legislation imposes reasonable controls over the operations of public purpose corporations, including WHEC. The legislation does not violate article IV, sections 31 and 32 of the Wisconsin ConstitUtion.[14] *Page 182 
II.
Your letter also asks whether the proposed legislation affects the state's covenants under the student loan revenue obligation bond program (the "Program"). In my opinion, it does not.
In the State Building Commission resolution creating the Program (the "Resolution"), the state covenanted with bondholders that as long as any bonds issued to finance the Program are outstanding and unpaid, the state will not limit or alter its powers to fulfill the terms of any agreements with bondholders or in any way impair the rights and remedies of bondholders. A similar pledge is contained in section 18.61 (1) with respect to revenue obligation programs generally. The Resolution also contains a covenant that the state will maintain and enforce a contract between the state and WHEC known as the Corporation Reserve Agreement and take no action in connection therewith which in any manner will adversely affect the rights of bondholders. Among other provisions, the Corporation Reserve Agreement obligates the state to provide administrative services to WHEC as long as any bonds are outstanding.
These covenants are protected against impairment by the contract clauses of the state and federal constitutions. Wis. Const. art. 1, sec. 12. U.S. Const. art. 1, sec. 10. SeeUnited States Trust Co. v. New Jersey, 431 U.S. 1 (1977). WHEC's contractual obligations, e.g., lender servicing agreements, employment contracts, etc., are similarly protected.
In 72 Op Att'y Gen. at 142, I cautioned that any "attempt to abrogate [WHEC's obligation to collect delinquent student loans] or otherwise transfer [WHEC's] obligations to the state would more than likely be a violation of the Contract Clause." I also stated that state assumption of WHEC's guarantee function would amount to giving the state's credit in aid of private individuals in violation of Wisconsin Constitution article VIII, section 3. If the proposed legislation were interpreted to have the effect of transforming WHEC into a state agency, the state's covenant not to impair the rights of bondholders would be breached. A state guarantee of student loan payments would be unconstitutional and, thus, void. The bondholders would be left without an essential component of the Program's *Page 183 
security. The proposed legislation does not, however, transform WHEC into a state agency.
The supreme court has repeatedly held that dummy corporations are not state agencies. E.g., Thomson v. Giessel 265 Wis. at 196;Thomson v. Giessel, 267 Wis. at 340; Bareies, 257 Wis. at 501;Nusbaum, 59 Wis.2d at 424. There is historical precedent for regulations of governmentally-created entities like that proposed by AB 85. The Wisconsin Federal Surplus Property Development Corporation had to report to the state Department of Resource Development. Herro, 42 Wis.2d at 95. State turnpike corporations had to seek route approval from the Legislature and the Governor.Thomson v. Giessel, 265 Wis. at 198. The members and officers of the Wisconsin University Building Corporation had to be "persons who [held] certain offices in the administrative structure of the university." Bareis, 257 Wis. at 501. The membership of the board of the corporation organized by the Educational Communications Board is statutorily restricted and the corporation must submit to an examination of its records by the Educational Communications Board, the Department of Administration, the Legislative Fiscal Bureau and the Legislative Audit Bureau, among others. Sec. 39.12 (3) and (4), Stats. Similar restrictions are part of the laws governing Wisconsin Housing and Economic Development Authority and the Bradley Center Sports and Entertainment Corporation.
I have no fear that WHEC would be construed as a state agency in light of these historical precedents. If the closeness of WHEC's relationship to the state were a problem. WHEC was closest when the bonds were issued; until recently. WHEC's board was the HEAB board. For most of its existence. WHEC had no employes, but, rather, was a shell, with legal independence from the state but practical dependence upon the state for the performance of its functions. Even after the proposed legislation, WHEC will be more of a separate creature than at the time the bonds were issued. If separation from the state were important to bondholders, they may be benefitted. rather than injured, by WHEC's new relationship with the state.
Bondholders might benefit in other ways. The proposed legislation subjects WHEC to the ethics law permits legislative audit, limits expenses of travel and employe compensation. opens WHEC's affairs up to public scrutiny and returns board membership *Page 184 
to gubernatorial appointees. These could all be perceived as enhancing the security of bondholders, to the extent the integrity of the bonds is dependent upon the integrity of WHEC. The state has an obligation to do nothing to jeopardize the well-being of bondholders. The proposed legislation does not affront that obligation.
With respect to WHEC's contractual obligations, as opposed to the state's contractual obligations to bondholders, there are no apparent impairment problems either On its face, the proposed legislation does not affect WHEC's ability to perform its contractual obligations to private lenders, employes or others. But "impairment is ultimately an issue of fact." 72 Op Att'y Gen. at 140. Whether or not any particular contract would be impaired cannot be determined at this time. On the basis of the facts known to me the proposed legislation does not violate either the state or federal contract clause.
III
Having concluded that the proposed legislation is constitutional and would not violate the state's duty to bondholders, I must still caution the state's lawmakers to tread carefully in this area. The wisdom of creating dummy corporations and of delegating to them the administration of important government programs, is for the Legislature and the Governor to determine. The supreme court has recognized the state's right to do so and right to regulate to a degree the entities so created. But there are limits to the state's control even where a private entity receives public money.
 A private agency cannot and should not be controlled as two-fistedly as a governmental agency. If such need for control is present, it might be better to use a governmental agency. A private agency is selected to aid the government because it can perform the service as well or better than the government. We should not bog down private agencies with unnecessary governmental control.
Warren v. Reuter, 44 Wis.2d at 217. Similar thoughts were expressed regarding dummy corporations.
"If a person enters into a contract with a dummy corporation, which is both created and limited by the statutes, he is entitled to rely on the provisions of the statutes." Herro,42 Wis.2d at 118. *Page 185 
 If we are going to recognize that . . . [dummy corporations] are separate and distinct from the state, then it must be determined that the property owned by the dummy corporation is not the state's property. . . . The legislature, as well as the public, must treat the dummy corporation as a distinct entity.
Herro, 42 Wis.2d at 116.
One might well question why the Legislature would allow HEAB, a state agency over which it has complete authority, to contract away its program responsibilities to WHEC, a private corporation over which it has less authority, and then try to regulate WHEC, rather than attempt to achieve the same results by regulating HEAB. Constitutionally, however, the Legislature, in this case at least, has the power to take either course, the proposed regulations being reasonably related to the purpose sought to be achieved and properly drawn to achieve that purpose.
BCL: ESM
[1] Subsequent to your request, on July 15. 1985. Assembly Bill 85 was enacted into law as 1985 Wisconsin Act 29. The provisions in question were vetoed. Since the veto is subject to override, this opinion refers to the provisions in question as the `proposed legislation' or the "proposal" References are to the Engrossed Bill. dated June 14, 1985.
[2] Arguably, public purpose corporations are already subject to legislative audit one of the proposed requirements, by operation of section 181.27 (2), which allows the state, for good cause. to petition the circuit court for access to the books and records of any chapter 181 corporation.
[3] Proposed section 181.79 would be read as an exception to section 181.03 which prohibits the organization under chapter 181 of insurance corporations.
[4] Risch involved a challenge to a legislative classification on equal protection grounds. There is no reason to believe that the principle stated would not apply to classifications challenged under article IV, sections 31 and 32
of the Wisconsin Constitution.
[5] To be eligible to participate in the federal program private guarantors must be nonprofit.
[6] American authorizes trace their ancestry to the Port of London Authority, which was so named because Lloyd George did not want to use such common names as commission. "board" or agency. Having observed that each section of the draft enabling act began "Authority is hereby given . . . .," he suggested the name "Port of London Authority" Cohen, They Builded Better Than They Knew
290 (1946).
[7] The Bradley Center Sports and Entertainment Corporation is subject to state audit and has a board of directors appointed by the Governor — two of the regulations the proposed legislation would impose on public purpose corporations.
[8] This corporation is subject to state audit and board membership is regulated — two controls sought to be placed upon public purpose corporations. Sec. 39 12. Stats.
[9] On the local level, Milwaukee County organized the Milwaukee County Industrial Development Corporation. State exrel. Bowman v. Barczak, 34 Wis.2d 57. 148 N W 2d 683 (1967).
[10] This was prior to the 1871 constitutional amendment creating the prohibitions against specific legislation.
[11] WHEC receives other benefits from the state: it enjoys a virtual monopoly by dint or its creation by HEAB.
[12] WHEC's Articles of Incorporation state that the corporation's purposes are "primarily to aid governmental programs for promotion of higher education . . . ."
[13] This opinion is not the vehicle for judging the propriety of a state agency apparently contracting away the entire operation of a statutory program. Nevertheless, it is appropriate to question whether the Department of Administration's authority to "contract for services which can be performed more economically or efficiently by . . . contract," section 16.705 (1). extends this far. It is also appropriate to raise whether loan servicing is within the scope of WHEC's authority under its Articles of Incorporation, which states as the corporation's purpose, "[t]o maintain, operate and administer a guaranteed student loan program."
[14] What has been stated with respect to the constitutional prohibition against special or private legislation leads to the conclusion that the proposed legislation is also valid under due process and equal protection principles See discussion of Stateex rel. Risch v. Trustees at page 174 hereof.
The State's authority to regulate public purpose corporations in the manner proposed derives from the police power.
 The [police] power is not limited to regulations designed to promote public health, public morals or public safety, or to the suppression of what is offensive disorderly, or unsanitary. but extends to so dealing with conditions which exist as to bring out of them the greatest welfare of the people by promoting public convenience or personal prosperity.
Watchmaking Examining Bd. v. Husar, 49 Wis.2d 526, 531,182 N.W 2d 257 (1971). The police power properly can be used "to promote the general prosperity of the state by the regulation of economic conditions" Id at 530. In testing the constitutionality of the proposed legislation under the due process and equal protection clauses the question is whether it has "any reasonable basis" Id. at 530.
Almost by definition. corporations performing public purposes are imbued with public interest. WHEC was created to guarantee loans under the government s student loan program. One could argue that the integrity of the program depends upon the responsible administration of the corporation. The proposed "public accountability" measures are all reasonably related to that end.