CITY OF BROOKFIELD, Village of Butler, Village of Menomonee Falls, City of Mequon, City of New Berlin, Village of Elm Grove, City of Muskego, Village of Germantown, Village of Thiensville, Richard E. Ensslin, Donald Wenzel and Raymond Gray, Plaintiffs-Respondents,

v.

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT, Defendant-Appellant.†

Supreme Court

*No. 86–2318. Argued January 5, 1988.—Decided June 29, 1988.*

(Also reported in 426 N.W.2d 591.)

---

† Motion for reconsideration denied on August 30, 1988. ABRA-HAMSON and STEINMETZ, JJ., dissent.

For the defendant-appellant there were briefs (in court of appeals) by *Michael J. McCabe, James H. Petersen, Harold B. Jackson, Jr.,* and *Milwaukee Metropolitan Sewerage District,* Milwaukee, and *James P. Brody, Michael A. Bowen* and *Foley & Lardner,* of counsel, Milwaukee, and oral argument by *James P. Brody.*

There was oral argument by *Maryann Sumi,* assistant attorney general, with whom on the briefs (in court of appeals) was *Donald J. Hanaway,* attorney general.

For the plaintiffs-respondents there was a brief (in court of appeals) by *Truman Q. McNulty, Thomas E. Griggs, Daniel M. Leep,* and *Mulcahy & Wherry,*

*S.C.; Schober & Radtke, S.C.,* New Berlin; *George A. Schumus,* West Allis; *Harold H. Fuhrman,* Milwaukee, and oral argument by *Truman Q. McNulty, Thomas E. Griggs.*

WILLIAM A. BABLITCH, J. Milwaukee Metropolitan Sewerage District (MMSD) appeals a decision of the Waukesha county circuit court which declared the challenged provisions of 1983 Wis. Act 27 and 1985 Wis. Act 29 unconstitutional as private or local laws impermissibly included in the state budget bill. These provisions, general on their face, concern the method by which sewerage districts containing cities of the first-class must charge their outlying municipalities for capital costs incurred in providing certain sewerage services. We hold that when legislation which arises in a classification context fails the classification tests previously established by this court, it is private or local legislation within the meaning of art. IV, sec. 18 Wis. Constitution, and as such must be passed in single subject, clearly titled bills. The challenged provisions fail the classification test and, therefore, cannot be included in an omnibus budget bill. Accordingly, we affirm the circuit court.

The facts are not in dispute. MMSD is a special purpose municipal corporation with its principal facilities and office in Milwaukee county, Wisconsin. It is a sewerage district containing a city of the first-class (first-class sewerage district). MMSD was created by a 1982 legislative reorganization of the existing first-class sewerage districts.

The plaintiffs-respondents (municipalities) are nine municipal corporations and three individual parties, each of whom is an elected official of one of

the municipalities. The municipalities are located outside MMSD's boundaries.

The challenged provisions relate to methods by which sewerage districts containing cities of the first-class must charge outlying municipalities for capital costs. Inasmuch as MMSD is such a district, the provisions apply to MMSD.

In the 1983 budget bill the legislature inserted a provision which required that any municipal body that is located outside a first-class sewerage district and that obtains sewerage service from such a district pursuant to contract must be assessed capital charges on the same basis as such charges are assessed within the district. The resulting 1983 provision became sec. 66.898(4)(c), Stats., cited in full below.[1] The provision was general on its face, and was not specific as to any person, place or thing.

In the 1985 budget bill, Wis. Act 29, the legislature imposed the same requirements with respect to out-of-district municipal bodies that are without contracts. This provision became sec. 66.899, Stats., cited in full below.[2] Again, the provision was general on its

---

[1] "66.898 Contract sewerage service....

"....

"(4)(c) If the commission adopts a system with respect to capital costs within the district on the basis of the value of the property in the area to be served, as equalized under s. 70.57, the commission shall adopt a system of sewerage service charges with respect to capital costs used in contracts executed under this section that shall equal the amount the commission would be able to levy as taxes upon the area to be served by the contract, if the area was within the district boundary."

[2] "66.899 Noncontractual sewerage service. (1) Notwithstanding ss. 66.076 and 66.91(5), if the commission establishes a system to recover capital costs within the district on the

face, and was not specific as to any person, place or thing.

Inasmuch as MMSD assessed capital costs within the district on a property value basis, both provisions had the effect of changing the method of assessing capital costs on the municipalities to a property valuation basis.

The municipalities, relying upon the requirement of art. IV, sec. 18, Wis. Const., that private and local laws be adopted in single topic, specifically titled bills, challenged both provisions. On November 29, 1986, the Waukesha county circuit court, Judge Robert T. McGraw presiding, granted the municipalities' motion for partial summary judgment. The court accepted the municipalities' arguments that under the test articulated in *Milwaukee Brewers v. DH&SS*, 130 Wis. 2d 79, 387 N.W.2d 254 (1986), the legislation was specific to the MMSD and that it had no statewide purpose, and was therefore unconstitutional as a private or local law impermissibly included in the state's budget bills.

MMSD appealed. The court of appeals certified the appeal which was accepted. The question present-

---

basis of the value of property in the area to be served, as equalized under s. 70.57, the commission shall establish a system of sewerage service charges to recover capital costs which shall be used with respect to any area which is served by the district and which is outside the boundaries of the district and outside of any municipality which has contracted with the district under s. 66.898. The charges shall be equal to the amount the commission would be authorized to levy as taxes upon the area served if the area were within the district's boundaries.

"(2) Any charge made by the district under this section is reviewable under s. 66.912(5) if the charge has been paid.

"(3) Section 66.91(5)(b) and (d) apply to charges assessed under this section.

"(4) The commission may charge municipalities assessed under this section reasonable interest for late payments."

ed is whether the challenged provisions, general on their face, come within the purview of art. IV, sec. 18. We conclude that they do.

## I.

MMSD argues that the test enunciated in *Brewers* is applicable only to legislation that is specific to any person, place of thing. They argue that the provisions challenged here are general on their face and applicable to an open class, i.e., sewerage districts containing a first-class city, and thus are not subject to *Brewers*. The municipalities argue, and the circuit court agreed, that because there is only one first-class sewerage district in the state, namely MMSD, the provisions challenged are place specific and therefore squarely within the rule of *Brewers*. On this point we agree with MMSD.

The *Brewers* test grew out of this court's most recent interpretation of art. IV, sec. 18. The legislation challenged required a prison to be built on 40 acres in Milwaukee "designated ... with a precision approaching a conveyancer's description." *Brewers,* 130 Wis. 2d at 118. We concluded that:

> "... a legislative provision which is specific to any person, place or thing is a private or local law within the meaning of art. IV, sec. 18 unless: 1) the general subject matter of the provision relates to a state responsibility of statewide dimension; and 2) its enactment will have direct and immediate effect on a specific statewide concern or interest." *Id.* at 115.

With respect to that part of the *Brewers* opinion relating to art. IV, sec. 18, the opinion cited three cases: *Milwaukee County v. Isenring and others,* 109

Wis. 9, 85 N.W. 131 (1901), *Monka v. State Conserva-tion Comm.*, 202 Wis. 39, 231 N.W. 273 (1930), *Soo Line R. Co. v. Transportation Dept.*, 101 Wis. 2d 64, 303 N.W.2d 626. None of these cases pertained to legisla-tive attempts to classify groups of cities, counties or any other entity. Each case cited, including *Brewers,* arose in a nonclassification context. *Isenring* dealt with sheriff's fees in Milwaukee county. *Monka* dealt with netting fish in Lake Michigan. *Soo Line* dealt with an at-grade railroad crossing near the Village of Prentice in Price county, Wisconsin. *Brewers* dealt with a prison on a 40 acre site in Milwaukee county. Two common threads run through these cases: each arose in a nonclassification context, each dealt with provisions that were specific to some person, place or thing.

*Brewers* recognized, as did *Monka* and *Soo Line,* that all legislation which is person, place or entity specific is not necessarily "private or local" within the meaning of art. IV, sec. 18, and that legislation of this type could nevertheless relate to a topic of statewide interest. In an attempt to provide a more workable, understandable, and analytical framework than the "balancing" test previously adhered to, the majority in *Brewers* enunciated a test designed to provide a narrow "statewide exception" to legislation that was specific on its face. The majority in *Brewers* concluded that notwithstanding the site specificity of the chal-lenged provisions, the provisions were not "private or local" within the meaning of art. IV, sec. 18 because of the responsibility of the state as a whole in prisons and prisoners, and the immediate effect the construc-tion of a major prison in Milwaukee would have on the entire state prison system.

The provisions challenged here are of a different nature. These provisions relate to an open, single member class. On their face they are not specific as to any person, place or thing. It is true that they apply at present only to the MMSD. But an "at present" effect is tested by determining whether the class is open. If so, its current single-member status is legally unobjectionable, *Adams v. The City of Beloit and others,* 105 Wis. 363, 81 N.W. 675 (1900); *Thielen v. Metropolitan Sewerage Commission,* 178 Wis. 34, 189 N.W. 268 (1922). *Brewers* did not arise in a classification context, nor did any of the cases which *Brewers* relied on. The municipalities invite us to extend *Brewers* to classification legislature. We decline to do so.

## II.

Having declined to extend *Brewers* to legislation such as that present here, the question nevertheless remains whether this legislation comes within the purview of art. IV, sec. 18. We conclude it does.

Up until 1871, the only constitutional prohibition against private, local or special legislation was art. IV, sec. 18. That section states in full: "No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." It is important to note that the term "private or local" is nowhere defined in the constitution. Thus, much of sec. 18 jurisprudence is substantive analysis of whether the provision is "private or local" within the meaning of sec. 18. Once it is determined that a provision is private or local, the section provides that the legislation must be a single

903

subject bill and the title of the bill must reflect the subject.

Thus, structurally under this section the first question is a substantive analysis of whether a bill is private or local. If so, the second inquiry is a procedural analysis to determine whether the legislation passed in a procedurally proper manner (i.e., as a single subject bill with a properly descriptive title). Conversely, if a bill is single subject and properly titled, it may be local or private, or general. Implicit in this is the observation that a single subject properly titled bill cannot run afoul of sec. 18.

In 1871 a constitutional amendment was passed that added yet another weapon for those that decried the proliferation of special legislation. Article IV, sec. 31, entitled "Special and private laws prohibited," cited in full below,[3] prohibited the legislature from

---

[3] "Special and private laws prohibited. Section 31. [As created Nov. 1871 and amended Nov. 1892] The legislature is prohibited from enacting any special or private laws in the following cases:

"1st. For changing the name of persons or constituting one person the heir at law of another.

"2d. For laying out, opening or altering highways, except in cases of state roads extending into more than one county, and military roads to aid in the construction of which lands may be granted by congress.

"3d. For authorizing persons to keep ferries across streams at points wholly within this state.

"4th. For authorizing the sale or mortgage of real or personal property of minors or others under disability.

"5th. For locating or changing any county seat.

"6th. For assessment or collection of taxes or for extending the time for the collection thereof.

"7th. For granting corporate powers or privileges, except to cities.

"8th. For authorizing the apportionment of any part of the school fund.

enacting any special or private laws in nine different classes of cases.

At the same time, art. IV, sec. 32, a companion to sec. 31 was adopted which allowed the legislature to adopt "general laws for the transaction of any business that may be prohibited by section thirty-one of this article ...." This section, however, did impose a requirement that "such laws shall be uniform in their operation throughout the state."

There is a certain parallel between art. IV, sec. 18, and art IV, secs. 31 and 32. Just as sec. 18 provides a substantive provision (private or local laws prohibited) and a procedural requirement (single subject bill with a properly descriptive title), so too do secs. 31 and 32. Section 31 provides the substantive prohibitions, sec. 32 provides the methods by which laws on the subjects enumerated in sec. 31 may be passed, namely the laws must be general laws and operate uniformly throughout the state.

Thus, since 1871, parties challenging certain legislative enactments as being private, local or special have had the benefit of two sections, sec. 18 and sec. 31, to bring their challenge. A body of jurisprudence has developed under each.[4]

---

"9th. For incorporating any city, town or village, or to amend the charter thereof. [1870 J.R. 13, 1871 J.R. 1, 1871 1 c. 122, vote Nov. 1871; 1889 J.R. 4, 1891 J.R. 4, 1891 c. 362, vote Nov. 1892]"

[4]The dissent suggests that the court may be "transforming sec. 18 from a rule regulating the form of the legislation to an outright substantive prohibition on the enactment of legislation." Dissenting opinion at 926.

The dissent misapprehends the substantive analysis inherent in sec. 18 jurisprudence. Any legislative provision which is properly brought before this court and which is alleged to run

Those cases in which the challenge is brought under sec. 31 invariably have followed the same patterns. A certain legislative provision is challenged as being one of the prohibited areas of legislation enumerated in sec. 31. The proponents of the legislation rely on sec. 32, claiming that the challenged legislation is a general law which is uniform in application throughout the state. For instance, in *Thielen* the question was whether allowing cities of the first-class to create a metropolitan sewerage district with boundaries beyond the city lines was invalid because the legislation passed as part of sewerage district legislation, and was thereby prohibited by sub. 7 of sec. 31, art. IV ("For granting corporate powers or privileges, except to cities"). The legislation was defended as being a general law of uniform application and therefore allowed under sec. 32. This court agreed: "The act being by its terms general, it is not within the provisions of sub. 7, sec. 31, art. IV, Const." *Thielen,* 178 Wis. at 51.

Similarly, in *Johnson v. The City of Milwaukee,* 88 Wis. 383, 670 N.W. 270 (1894), the question was whether the legislature could pass a bill allowing specially chartered cities which had a certain popula-

afoul of sec. 18 must be analyzed to determine whether it is actually local or private. This necessarily implies a substantive scrutiny, although one more narrow than that employed in other contexts, see *infra* footnote 6. If the legislature wishes to pass a law which is not subject to this substantive scrutiny, it has merely to pass the law in conformance with the procedural requirements of sec. 18. Such a law, as described *infra,* footnote 5, will be subject to this court's presumption that the legislation is constitutional, and will only be found unconstitutional if it runs afoul of the familiar litany of constitutional prohibition, for example, if it denies due process, or equal protection, etc.

tion to issue bonds. The legislation was challenged as being a local bill prohibited by sec. 31. The legislation was defended as being a general bill of uniform application as provided in sec. 32. This court concluded that although the law did act to amend a charter, the law was nonetheless a general law and hence not prohibited.

For other cases substantially similar, *see also Burnham v. City of Milwaukee and others,* 98 Wis. 128, 73 N.W. 1028 (1897); *Adams v. Beloit,* 105 Wis. 363; *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N.W. 954 (1904); *Madison Metropolitan Sewerage Dist. v. Stein,* 47 Wis. 2d 349, 177 N.W.2d 131 (1970).

Common threads run throughout these cases. Each dealt with legislation that attempted to classify certain entities such as cities or counties. None on their face was specific as to any particular person, place, or thing. Each allegedly ran afoul of the specific prohibitions of sec. 31. Each was defended as being a general law of uniform application throughout the state and thus within sec. 32.

Understandably, a body of jurisprudence has grown up with respect to these types of cases. First outlined in 1894 in *Johnson,* 88 Wis. at 390–91, this court has consistently applied certain rules for determining the legislature's competence under sec. 32 to pass laws affecting only certain entities, such as cities or counties of a certain class or size, notwithstanding the prohibitions of sec. 31. These rules are as follows:

First, the classification employed by the legislature must be based on substantial distinctions which make one class really different from another.

Second, the classification adopted must be germane to the purpose of the law.

907

Third, the classification must not be based on existing circumstances only. Instead, the classification must be subject to being open, such that other cities could join the class.

Fourth, when a law applies to a class, it must apply equally to all members of the class.

In 1904, *State ex rel. Risch,* 121 Wis. at 54, added a fifth rule: the characteristics of each class should be so far different from those of the other classes so as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

Finally, in 1970, *Stein,* 47 Wis. 2d at 364, added a sixth rule: when the legislation is curative in nature, as long as the curative legislation applies equally to all members of the class, the legislation is general.

If a law passed by the legislature meets all these criteria, then it is a "general law" and uniform within the meaning of sec. 32 and therefore proper, notwithstanding that it comes within one of the specific categories of prohibited legislation found within sec. 31.

Now we turn to those cases in which the challenge has been brought under art. IV, sec. 18 as being a private or a local law. Two lines of cases emerge. First, those cases in which the challenged legislation is specific on its face to a particular person, place or thing. As has been stated above, and as will be further elaborated below, this is the line to which *Brewers* belongs. The second and more challenging line of sec. 18 cases are those in which the challenged legislation is not specific on its face to a particular person, place, or thing. The legislation in this line of cases attempts to classify certain entities such as cities or counties but the legislation, unlike the secs. 31 and 32 cases

discussed above, does not run afoul of any of the specific prohibitions of sec. 31. The case at bar, *MMSD,* belongs to this second line of sec. 18 cases.

The first line of cases in which the challenge was brought under sec. 18 are cases in which the challenged legislation is specific on its face to a particular person, place, or thing. In *Monka,* the challenged legislation was an attempt to regulate fishing in Lake Michigan. In *Soo Line,* the challenged legislation directed the construction of an at-grade railroad crossing and gave the exact name of the railroad crossing involved. *See also Isenring,* 109 Wis. 9; *State ex Rel. Joint School Dist. v. Nyberg,* 183 Wis. 215, 197 N.W. 724 (1924); *Brewers,* 130 Wis. 2d 79.

By contrast to these cases, in which the specificity of the legislation is obvious on the face of the legislation, the second line of cases in which the challenge was brought under sec. 18 involve provisions that are not specific on their face, do not run afoul of the specific prohibitions of sec. 31, and arise in a classification context. *See Wagner v. Milwaukee County,* 112 Wis. 601, 88 N.W. 577 (1902); *Whitefish Bay v. Milwaukee County,* 224 Wis. 373, 271 N.W. 416 (1937); *Lamasco Realty Co. v. Milwaukee,* 242 Wis. 357, 8 N.W.2d 373 (1943). These cases all present classification questions even though the challenges were brought under sec. 18. Because we conclude that the case before us logically belongs in this second line of cases, these cases control the resolution of this case.

In *Wagner,* the plaintiff argued that the challenged legislation was private or local under sec. 18. The case arose in a classification context, and the court agreed that the statute was not constitutional.

The importance of *Wagner* is that it imported secs. 31 and 32 jurisprudence into sec. 18 jurispru-

dence for the first time. In other words, in a case which arose in a classification context the court for the first time employed the "open-closed" distinction and the germaneness test to a question presented under sec. 18. The court focused on the private-local aspects of sec. 18; however, in coming to the conclusion that the challenged legislation was unconstitutional under sec. 18, the court relied on the jurisprudence which had already been developed under secs. 31 and 32 cases. The only departure from the earlier jurisprudence was the court's statement that the present effect of the legislation was a relevant consideration.

In *Whitefish Bay,* the court once again adopted the secs. 31 and 32 analysis to a case that arose in a classification context and was challenged under sec. 18. The question presented was whether a law allowing counties of over a certain population to collect taxes in a special way was unconstitutional under sec. 31 and also under sec. 18. The court held the law did not run afoul of the sec. 31 prohibition on enacting special tax levies, but instead rejected the law on the ground that it was unconstitutionally local under sec. 18. The court, however, incorporated the sec. 32 analysis into its analysis of sec. 18, holding that the class, while technically an "open" class was really a "closed" one, and further that the classification adopted was not germane to the purpose of the law.

In *Lamasco,* the court made it clear that the tests for whether a bill is local or private or special under sec. 18 or secs. 31 and 32 are essentially identical in a classification context.

These cases (*Wagner, Whitefish Bay,* and *Lamasco*) demonstrate that with respect to challenges to legislation that arise in a classification context, this

court has adopted secs. 31 and 32 analysis as an aid in sec. 18 analysis. When the legislation being challenged under sec. 18 arises in a classification context, this court has not hesitated to employ the established classification concepts developed in cases under art. IV, secs. 31 and 32.

In summary to this point of the analysis, the cases which have come before this court challenging legislation as being private or local or special, fall into three categories:

First, legislation that arises in a classification context which is not specific on its face, but which allegedly runs afoul of the specific prohibitions of sec. 31. The resolution of these cases rests on whether the legislation is a general law of uniform application within the meaning of sec. 32. The teaching of *Johnson* and it progeny is, essentially, that if the legislation being challenged contains classifications which are open, germane, and relate to true differences between the entities being classified, then the legislation is considered general and of uniform application. As such, it falls into the category of matters upon which the legislature is competent to legislate pursuant to sec. 32 notwithstanding, the prohibition of sec. 31.

Second, legislation that is specific on its face to particular people, places or things, allegedly running afoul of sec. 18. *Monka, Soo Line* and *Brewers* teach that such legislation is private or local within the meaning of sec. 18 and therefore prohibited unless the general subject matter of the provision relates to a state responsibility of statewide dimension and its enactment will have a direct and immediate effect on a specific statewide concern or interest.

Third, legislation that arises in a classification context that is not specific on its face and does not run afoul of the specific prohibitions of sec. 31 but allegedly runs afoul of sec. 18. *Wagner, Whitefish Bay* and *Lamasco* teach us that such cases must be analyzed consistent with the classification concepts developed in cases under art. IV, secs. 31 and 32.[5]

[5]The dissent suggests that these concepts are a "five-part rational basis test ...." Dissenting opinion at 923. While it is true that these classification rules have been used in an equal protection setting (*see, e.g., Cayo v. Milwaukee,* 41 Wis. 2d 643, 649, 165 N.W.2d, 198 (1969)), and while it is true that there is a certain similarity between the questions being asked in a sec. 18 context and those asked in an equal protection context, it is not true that the concepts in both contexts are identical.

This may be most easily understood in terms of the differing purposes behind art. IV, sec. 18 and those behind art. I, sec. 1, the equal protection clause of the Wisconsin Constitution, as well as the Fourteenth Amendment to the U.S. Constitution.

Section 18 sets forth a procedural condition that certain legislation must be passed in single subject, clearly titled bills. The purpose behind this requirement is to "guard against the danger of legislation, affecting private or local interests, being smuggled through the legislature." *Isenring,* 109 Wis. at 23. In the instant opinion, we characterize this same concern as one to avoid "internal logrolling." *Infra* at 922.

In the sec. 18 context, the point of the rules listed in the text is to determine whether some sham or artifice is being perpetrated by smuggling through a local bill in the sheep's clothing of a statewide interest or a general bill. Provided, of course, that the issue is properly raised before this court, this court will apply the *Brewers* "statewide interest" test when the challenged laws are specific on their face, and we herewith reinvigorate the nearly century-old classification tests to aid in deciding the more complex cases in which the challenged legislation is not specific on its face.

By contrast to sec. 18, under equal protection the legislature is not being accused of violating a constitutionally mandated proce-

We turn now to the case before us. The two pieces of legislation being challenged arise in a classification context, namely the challenged provisions apply to all sewerage districts which contain a first-class city. Neither piece of legislation is specific on its face.

dural rule. Therefore, because the legislature is now presumed to have "intelligently participate[d] in considering such bill ...." (*Isenring,* 109 Wis. at 23) this court is not seeking to determine whether a sham has been perpetrated. Consequently, this court has repeatedly stated that a law attacked on equal protection grounds is entitled to a presumption of constitutionality, *see, e.g., Laufenberg v. Cosmetology Examining Board,* 87 Wis. 2d 175, 181, 274 N.W.2d 618 (1979) which presumption attends the use of the rational basis test.

Thus, although both sec. 18 and equal protection seek to determine whether one group is being accorded favored status, the difference between the sec. 18 and the equal protection contexts is this: In sec. 18 cases, because the legislature is alleged to have violated a law of constitutional stature which mandates the form in which bills must pass, the court will not indulge in a presumption of constitutionality, for to do so would make a mockery of the procedural constitutional requirement. Instead, the court will proceed to determine whether the law is procedurally proper without recourse to the rational basis test. In so doing, the court will narrowly examine the substantive issues presented, (either under a statewide interest test as in *Brewers,* or under the classification tests, as here). This standard procedure under sec. 18 was the procedure followed in none other than *Soo Line,* 101 Wis. 2d 64, a case authored by the dissentor. *See also Brewers,* 130 Wis. 2d at 114, where the distinction between art. IV, sec. 18 and art. I, sec. 1 is further explained.

By contrast, in equal protection, as stated above, the court will presume constitutionality. Thus, although the multipart test listed *supra* in the text is used in both a sec. 18 context and an equal protection context, the tests are necessarily differently applied, given the quite different purposes of sec. 18 and equal protection. To assert that because the tests are the same they must always indicate the presence of intent to employ a rational basis test is to make the same flawed argument as that which Learned

Neither runs afoul of the specific prohibitions of sec. 31. Both, it is alleged by the plaintiff municipalities, run afoul of sec. 18. Thus, the challenged legislation falls within the third category of cases referred to above.

Consistent with the cases that have come within that third category, we employ the classification concepts developed in cases under art. IV, secs. 31 and 32 to determine whether the challenged legislation is prohibited by sec. 18.

As stated above, this court has developed a sophisticated multirule test to determine whether legislation which is general on its face is impermissibly local or private because the generality is simply a surface sham. If the legislation in question fails any of the established rules, it is special, private or local. Under this court's classification tests, going all the way back to *Johnson* in 1894, this court has held that the legislation embodying the classification was void

Hand laid to rest in a slightly different context when he said "words are chameleons, which reflect the color of their environment ...." *Commissioner of Internal Rev. v. National Carbide Corp.*, 167 F.2d 304, 306 (1948), and which Justice Vinson similarly laid to rest in a still slightly different context when he said "[n]othing is more certain in modern society than the principle that there are no absolutes, that a ... standard has meaning only when associated with the considerations which gave birth to the nomenclature." *Dennis v. United States*, 341 U.S. 494, 508 (1951).

Consequently, we reject the dissent's point that out use of the multipart classification test indicates use of rational basis. Indeed, as we have stated previously "in a challenge brought under art. IV, sec. 18, it is not relevant to inquire as to whether a rational basis existed for the legislative provision." *Brewers,* 130 Wis. 2d at 114. *See also* dissenting opinion at 923. The cases we have cited in the text, as well as this case, demonstrate the narrow focus with which the classification tests are properly applied in their sec. 18 context.

unless the classification is based on "substantial distinctions which make one class really different from another." The legislation also fails if the classification to which the challenged provisions apply are not germane to the purposes of the law. *Johnson,* 88 Wis. at 391. The question of whether classes differ, or whether a classification is germane to the purposes of the law, is itself a question of law. Recognizing this, counsel for MMSD urged this court at oral argument to make these determinations on the record before it. We conclude that in this case, as a matter of law, the two challenged pieces of legislation fail under both tests.

The two pieces of challenged legislation concern the method by which sewerage districts containing cities of the first-class charge the outlying plaintiff municipalities for capital costs. Initially, the charges were based on a flowage, or volume basis. The challenged legislation changed this method by providing that sewerage districts containing cities of the first-class must charge outlying municipalities on the same basis as such charges are assessed within the district. These provisions had the effect of changing the method of assessing capital costs on outlying municipalities to a property valuation basis. These legislative provisions apply only to districts containing cities of the first-class. No other sewerage districts are affected. *See* secs. 66.20 to 66.26, Stats., which control the state's other sewerage districts. The legislation classifies two distinct sewerage districts: sewerage districts containing cities of the first-class and all other sewerage districts. The legislation has the effect of allowing the former the power to charge their outlying municipalities on property value basis but

leaves unchanged the methods the latter may employ to charge their outlying municipalities.

The first question is whether the classification employed is based upon substantial distinctions between the two classes. In order for the challenged legislation to pass constitutional muster under this rule, there must be something so substantially distinct about sewerage districts containing the cities of the first-class that it is necessary for them, as opposed to all other sewerage districts, to raise funds for capital costs by charging their outlying municipalities by this special method. If there is not something substantially distinct about them that requires this method of assessing charges, then the legislation, although appearing to be general on its face, is in reality local or private legislation and hence may not be passed except as a properly titled single purpose bill, as provided in art. IV, sec. 18.

We can discern nothing, nor is there any argument presented to us which leads us to the conclusion that there is anything about sewerage districts containing cities of the first-class which requires them to have this power, a power which is not granted to all other sewerage districts. We do not mean by this that the size of a sewerage district cannot lead to special problems inherent in that size. Indeed, this court has previously recognized that the opposite is true. *See Thielen,* 178 Wis. 34; *West Allis v. Milwaukee County,* 39 Wis. 2d 356, 159 N.W.2d 36 (1968). However, mere size does not create a justification for all legislation which favors the large sewerage district over the small one.

MMSD is distinguished by size, but the challenged legislation here is not related to this size difference. As this court said in finding certain legislation uncon-

stitutional which legislation allowed only Milwaukee county a special method of distributing taxes: "The village of M in the county of X may suffer just as acutely and in exactly the same way that the village of N may suffer in the county of Milwaukee." *Whitefish Bay*, 224 Wis. 2d at 378. Therefore, the court held that even though Milwaukee county was far larger than other counties, because the size difference did not go to any substantial difference between the counties with respect to tax distribution, the legislation was local. Similarly, the legislation here has nothing to do with size. Instead, this legislation deals with a problem common to all sewerage districts regardless of size: the problem of financing. The proponents present no argument, and we can discern none, that there is something about the size of this sewerage district which makes it necessary for them and only them, to have this special charging power, a power which here amounts nearly to a right of unilateral annexation of the nondistrict user municipalities.

In addition to failing under the "substantial distinctions" test, we conclude the challenged legislation also fails under the related germaneness test. In order for the challenged legislation to pass this "germaneness" test the classifications to which the provisions apply, i.e., first-class sewerage districts, must be closely akin to, or have a close relationship with, the purposes of the provisions. The purposes of the provisions are apparent: they mandate that first-class sewerage districts must assess capital charges to outlying municipalities on the same basis as they are assessed within the district, thereby allowing MMSD to assess capital charges on outlying municipalities on a property valuation basis. The classification adopted (sewerage districts containing cities of the first-class)

is not germane to the purposes of the law (a method of financing for capital improvements). As discussed above, there is nothing inherent about first-class sewerage districts which requires that they be allowed to finance capital costs in this special manner allowed only to them.[6]

---

[6]The dissent suggests that the matter at issue here be remanded for a determination of whether special problems suffered by MMSD can justify the challenged legislation.

However, as the classification tests are employed in the sec. 18 context (i.e.: narrowly), no such justifications are readily apparent. Indeed, as we have stated in the text, under classification as employed by the *Whitefish Bay* and *Wagner* cases, the opposite is true: the legislation here fails for lack of both substantial distinctions and germaneness.

Under the circumstances of our narrow search for justifications in the sec. 18 context, the better approach to a final resolution of this much protracted dispute, and the one which we adopt, is to reject further invitation, to post-hoc justification. Instead, we recommend this legislation to the full scrutiny of the legislature, *see Isenring*, 109 Wis. at 23 and *Soo Line*, 101 Wis. 2d at 72, (citing Hurst, *The Growth of American Law: The Law Makers*, (1950) and Cloe & Marcus, *Special and Local Legislation*, 24 Ky. L. J. 351 (1936)). The point of both cases is that under sec. 18, full scrutiny of the legislature, rather than the substituted process of smuggling through is the best determinant of need.

Just as we seek not to err on the one hand by employing an inappropriate standard of deference through presuming constitutionality where such a presumption would render sec. 18 meaningless, so equally we seek not to err on the other hand by substituting our judgment for that of an attentive legislature. This court is ill suited to determine a question as essentially economic and political as whether MMSD should be given a power which amounts nearly to a right to unilaterally annex surrounding areas. Our role is limited to determining the much narrower issue of whether the legislature followed its constitutionally mandated

In this sense, this case is similar to *Wagner,* 112 Wis. at 601. There the issue was whether an act, general on its face, which allowed counties to build viaducts was constitutional. The act contained a provision which mandated that the authorized viaducts must have certain physical characteristics, and cost over $80,000, and further, must be financed by bonds;

> "'... provided that the amount of bonds so issued shall not, exclusive of interest, exceed a sum equal to one fifth of one percent of the value of all taxable property of said county, as determined by the last assessment and equalization for state and county taxes next prior to the issue thereof.'" *Wagner,* 112 Wis. at 605.

It was undisputed that only Milwaukee county could raise $80,000 by bonds without exceeding one-fifth of one percent of the value of its taxable property.

The court, citing the *Johnson* rule, found this act unconstitutional under art. IV, sec. 18.[7] The court held that the act failed the germaneness test because the

procedure, and our substantive analysis is restricted to the service of that narrow determination.

If such legislation is passed after full consideration (which consideration will be evident through compliance with sec. 18's procedural requirements), and if such legislation comes before this court again on some other ground such as equal protection, that will be the proper time to engage in the presumption of constitutionality implicit in the dissent's proffered concerns.

[7]The court also cited art. IV, sec. 23. However, art. IV, sec. 18 was the section relied upon for most of the analysis. *See Wagner,* 112 Wis. at 608 ("We must hold that the act in question is local and special, within the meaning of the provision of the constitution quoted. Moreover, it ... is repugnant to sec. 23, art. IV, Const.").

classification employed (counties with a certain geographical feature and a certain nature of taxable property) was not germane to the purpose of the law (regulating viaducts). Similarly, in this case, we hold that the challenged legislation fails because the classification employed is also not germane to the purpose of the law.

As in the *Wagner* case, where there was nothing inherent about Milwaukee county's size which legitimated a law authorizing the scheme contained in the law, so in this case there is also nothing inherent about MMSD's size which closely relates to a law authorizing the challenged financing scheme.

We therefore conclude that the challenged legislation, although general on its face, is local legislation within the meaning of art. IV, sec. 18. The classification employed is not based on any substantial distinction between the classes employed, nor is it germane to the purposes of the law.

The court of appeals, in certifying this case to us, raised the question of whether the classification cases can be harmonized with *Brewers* by having the multipart classification tests embodied in past cases go to the question of whether the legislation is private or local, and then use the *Brewers* test if the result is positive. However, once a law is found private or local, application of the *Brewers* test would be unnecessary and inappropriate. *Brewers* involved legislation that on its face was specific to a certain locale. The question was whether the legislation, notwithstanding its specificity, was of such statewide impact that it was not private or local within the meaning of art. IV, sec. 18. *Brewers* recognized, as did *Monka* and *Soo Line,* that all legislation which is specific to a particular

person, place or thing, is not necessarily proscribed by art. IV, sec. 18. The *Brewers* test provides an analytical framework to test legislation that is specific on its face. If legislation specific on its face meets the two part test, it is not private or local.

In contrast, the classification test employed here starts with legislation that is general on its face, and the multi-part test is used to determine whether the "generalness" is a surface sham hiding its true private or local nature. If it is determined that the legislation is in reality private or local, that ends the inquiry. There is no need to apply further tests, as we did in *Brewers,* to determine if the legislation is not private or local. That question has been determined by the application of the classification tests. The only question remaining is whether the bill was properly passed as a single item, properly titled bill.

In conclusion, having determined that there is no substantial distinction between the classifications employed which make it necessary for one class to have a method of charging outlying municipalities different from all other classes, and further that the classification is not germane to the purpose of the laws, the challenged provisions are private or local laws within the meaning of art. IV, sec. 18. As such they must, when passed, embrace not more than one subject and that subject must be expressed in the title. Article IV, sec. 18. Inasmuch as the challenged provisions were passed as parts of two omnibus budget bills, they are unconstitutional.

In *Brewers,* it was said that art. IV, sec. 18 is not a meaningless constitutional gesture. *Brewers* taught that legislation that is specific on its face to a particular place, or thing must have a direct and

immediate impact on matters of general statewide importance in order to be included in a multi-subject bill. This case makes clear that the reach of art. IV, sec. 18 extends beyond clever draftsmanship. Legislation that appears general on its face but is in reality, under the principles of classification, private or local legislation, also comes within the ambit of art. IV, sec. 18. As such, it must be a single subject bill with the subject of the bill expressed in the title. It cannot be passed as part of a multi-subject bill, subject to the internal logrolling that has seemingly come to permeate the budget process. It must rise or fall on its own merits.

*By the Court.*—Judgment of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). I dissent for three reasons. First, the majority's choice of the appropriate test for determining whether the statutes in this case contravene Wis. Const. art. IV, sec. 18, conflicts with established law. Second, the majority's adoption of a rational basis test for determining the constitutionality of statutory provisions under art. IV, sec. 18, appears to transform sec. 18 from a provision governing the form of a bill into a provision governing the substance of a bill. The majority opinion adoption of a complex set of rules will foster litigation. Third, even if I were to apply the rational basis test formulated by the majority, I would conclude that the method of funding capital improvements in a metropolitan sewerage district which has included within it a first class city is rationally related to the population-based classification.

## I.

In determining whether the statutory provisions in issue are private or local laws that contravene Wis. Const. art. IV, sec. 18, the majority opinion departs from the rule set forth in our more recent cases.

The five-part rational basis test that the majority borrows from cases interpreting Wis. Const. art. IV, secs. 31 and 32, and from cases interpreting equal protection guarantees directly conflicts with the court's holding in *Milwaukee Brewers Baseball Club v. Department of Health and Social Services,* 130 Wis. 2d 79, 387 N.W.2d 254 (1986). In *Brewers* the court held: "In a challenge brought under art. IV, sec. 18, it is not relevant to inquire as to whether a rational basis existed for the legislative provision." *Brewers,* 130 Wis. 2d at 114.

Indeed the majority opinion in this case substantially adopts the reasoning of Justice Steinmetz's dissenting and concurring opinion in the *Brewers* case, at least to some sec. 18 cases. Justice Steinmetz advocated the use of the five-part rational basis test to determine whether a classification is legitimate for purposes of all sec. 18 cases. The court rejected this analysis which Justice Steinmetz derived from his study of *Milwaukee County v. Insenring,* 109 Wis. 9, 85 N.W. 131 (1901), and *Monka v. State Conservation Comm.,* 202 Wis. 39, 231 N.W. 273 (1930). Justice Steinmetz read those cases as saying that a bill is private or local if it "imposes a burden or confers a benefit upon specified persons or localities, which do not constitute a legitimate class for the purpose of general legislation under the established principles of classification of cities for such purpose." *Milwaukee Brewers,* 130 Wis. 2d at 139 (Steinmetz, J. concurring

in part and dissenting in part) (citing *Monka v. State Conservation Comm.,* 202 Wis. 39, 45–46, 231 N.W. 273 (1930)).

As I read the numerous cases interpreting sec. 18, I conclude that the fundamental question is whether the law is limited to a particular person, place, or thing. Or, as some cases say, whether the classification is closed. If the law is so limited or is a closed classification, the law will not violate sec. 18 as long as the general subject matter of the provision relates to a state responsibility of statewide dimension and its enactment will have direct and immediate effect on a specific statewide concern or interest. *Milwaukee Brewers,* 130 Wis. 2d at 118–19.

By dividing the cases into three categories and engrafting a five-part rational basis test onto some but not all of the sec. 18 cases, the majority has further complicated this already troublesome area of the law. The courts and legislature need a clear test which can be readily applied to determine whether a provision is a private or local law under sec. 18. The majority's creating a third category of cases which includes some but not all sec. 18 cases does not fulfill this need.

The case law cited by the majority does not support applying a secs. 31 and 32 rational basis analysis to some but not all of the cases implicating sec. 18. The case law on the relation between sec. 18 and secs. 31 and 32 is neither as clear nor as consistent as the majority opinion suggests.

The three cases upon which the majority relies to engraft art. IV, secs. 31–32 law onto some sec. 18 cases focus on whether the classification in the law is open or closed. In *Wagner v. Milwaukee County,* 112 Wis. 601, 88 N.W. 577 (1902), and in *Whitefish Bay v. Milwaukee Co.,* 224 Wis. 373, 271 N.W. 416 (1937), the

statutes were held unconstitutional under sec. 18 because, although the classifications appeared general or open in language, the statutory classifications were actually closed, that is, the statutes really governed a single place, namely Milwaukee county. No county other than Milwaukee could ever fit within the statutes' classifications. A statute creating a closed classification is the same as legislation that is specific on its face to a certain locality; it is the same as if the legislature referred, for example, specifically to Milwaukee. The court held that such laws are private or local laws that must be passed in conformity with the form requirements of art. IV, sec. 18. Thus the holdings in *Wagner* and *Whitefish Bay* did not really rest on a five-part rational basis analysis.

Furthermore, *Whitefish Bay* suggests that a closed class which is local under sec. 18 can still meet the five-part rational basis test of secs. 31 and 32. 224 Wis. at 378. The *Whitefish Bay* court intimated that the local law in that case would be valid against a rational basis test because Milwaukee county had special attributes—an urban population and towns, villages and cities of various classes—which justify the private or local law.

The third case upon which the majority relies is *Lamasco Realty v. Milwaukee,* 242 Wis. 357, 8 N.W.2d 373 (1943). In that case the statutory classification was first class cities. Milwaukee was the only first class city in the state and there was no reasonable probability that there would be other first class cities. The classification was nevertheless open because theoretically other cities could become first class cities. The court upheld the law under secs. 18 and 31.

I do not think *Lamasco* can be read to impose a secs. 31 and 32 analysis on sec. 18 cases because the

court's discussion was brief and did not analyze secs. 18 and 31 separately. The essence of the court's discussion was an acknowledgment that, while legislation adopting an open population classification does to an extent allow the legislature to evade the constitutional prohibitions of sec. 18 and 31, the court has been willing to uphold this kind of legislation. 242 Wis. at 357. The *Lamasco* case does not support the majority's conclusion that this court has adopted the five-part rational basis test for some sec. 18 cases.

I cannot join the majority because the case law upon which the majority opinion relies does not support its analysis and because the majority's decision to apply a five-part rational basis test to some but not all sec. 18 cases formulates a rule which is unnecessarily burdensome for the legislature and the courts to apply in determining whether the provision is a private or local law under sec. 18.

## II.

By departing from its analysis in *Brewers* and applying a rational basis test to art. IV, sec. 18, the court may be transforming sec. 18 from a rule regulating the form of the legislation to an outright substantive prohibition on the enactment of legislation. Sec. 18 allows the legislature to enact a private or local law if the legislature adopts the measure as a separate bill whose title describes the contents of the law. The purpose of this provision is to guard against the danger of legislation affecting private or local interests being smuggled through the legislature under misleading titles. Sec. 18, unlike sec. 31, is a matter of form, not substance. Brown, *The Making of the Wisconsin Constitution,* 1952 Wis. L. Rev. 23, 33.

However, when a court applies a rational basis test in a sec. 18 case, and the law fails that test, it would appear that the legislature cannot subsequently adopt the measure as a separate bill unless it abandons the classification. The five-factor test applied by the majority is essentially the rational basis test used to decide whether a statute violates the equal protection guarantees of Wis. Const. art. I, sec. 1, and the Fourteenth Amendment of the federal Constitution.[1] Thus if legislation fails under the analytical approach suggested by the majority, the classification apparently also violates art. I, sec. 1, of the Wisconsin Constitution.[2] The majority has made a constitutional procedural safeguard into something else altogether.

In this case, the majority opinion holds that, as a matter of law, the classification is bad and the statutes fail the germaneness test. The majority holds that there is nothing about sewerage districts containing cities of the first class that would permit the legislature to grant them the power to charge for capital

---

[1]In equal protection cases, the court has characterized the five factors which the legislative classification must satisfy as overlapping and has said that the essential question posed by the five factors is whether there are any real differences to distinguish the favored or burdened class. *State ex rel. Grand Bazaar v. Milwaukee,* 105 Wis. 2d 203, 215, 313 N.W.2d 805 (1982); *Kallas v. Millwork Corp. v. Square D Co.,* 66 Wis. 2d 382, 289, 225 N.W.2d 454 (1975).

For a discussion of secs. 18, 31 and 32, art. IV, and the equal protection guarantee, see Klitsner, *Statutes—Special Legislation—Constitutional Prohibition Against Granting or Amending City Charters, Classification and Municipalities,* 1941 Wis. L. Rev. 396.

[2]The individuals involved in this case could assert an equal protection challenge. See *City of Appleton v. Town of Menasha,* 142 Wis. 2d 870, 419 N.W.2d 249 (1988).

improvements on an ad valorem basis, a power not granted to all other sewerage districts. Majority opinion at pages 912, 914–918. The result of this holding seems to be that the legislation would face an equal protection challenge because the majority opinion has decided the issue as a matter of law. Thus, the result of this case appears to be that the legislature cannot grant a sewerage district with a first class city this kind of power without granting the same power to all other sewerage districts, even if the legislature passed these provisions as a separate bill with an appropriately descriptive title.

This court should not change a constitutional procedural provision into a substantive prohibition.

## III.

Even if the court should apply a five-part rational basis test in some but not all sec. 18 cases, I believe that the conclusion reached in the majority opinion is contrary to established precedent.

This court has said that when a statute is challenged under sec. 18, there is a presumption of constitutionality and the challenger has the burden to prove unconstitutionality beyond a reasonable doubt. *Soo Line Railroad Co. v. DOT,* 101 Wis. 2d 64, 76, 303 N.W.2d 626 (1981). This presumption of constitutionality is the generally accepted rule when a statute is challenged as special legislation under a state constitution. 2 Sands, *Sutherland Statutory Construction* sec. 40.06, p. 215 (1986 Rev. ed.)

The presumption of constitutionality has also been consistently applied in cases interpreting art. IV, secs. 31 and 32, from which the majority derives its five-part test for this case. *See, e.g., Johnson v. City of*

*Milwaukee,* 88 Wis. 383, 60 N.W. 270 (1894); *Adams v. City of Beloit,* 105 Wis. 363, 373, 81 N.W. 869 (1900); *State ex rel. Risch v. Trustees,* 121 Wis. 44, 54, 98 N.W. 954 (1904).

The majority opinion is silent about the presumption of constitutionality and the assignment of burden of proof. The majority does not presume, as it should, that facts exist which support the legislative determination that the classification is based on real distinctions and that the classification is germane to the purpose of the statute.

Instead, the majority opinion erroneously puts the burden on the party supporting the constitutionality of the legislation to prove that facts exist that support the legislative classification. Majority opinion at page 18. The burden should be on the challenger.

I conclude that the challenger in this case has not overcome the presumption of constitutionality. This is a summary judgment case, and the record consists predominantly of the parties' briefs filed in the circuit court, copies of statutes, and some depositions and affidavits. If I were to apply the majority's analysis to the facts presented in this record, I would conclude that the challengers in this case have not met their burden of proving that there are no facts supporting the legislative classification.

Since 1922, this court has recognized that the legislature may govern a sewerage district with a first class city differently from other sewerage districts. *Thielen v. Metropolitan Sewerage Comm'n,* 178 Wis. 34, 51, 189 N.W. 268 (1922). In *West Allis v. Milwaukee County,* 39 Wis. 2d 356, 159 N.W.2d 36 (1968), involving the constitutionality of a statute governing the construction and financing of waste-disposal plants in counties with a population in excess of 500,000 (Mil-

waukee), the court took judicial notice that the refuse problems of a metropolitan, urban area are related to concentration of population.

I think that the concentration and density of population in a county with a first class city, the industrial base, the diverse wastes, and the water pollution problems in an urban center, and the history of the difficulties of the Milwaukee Metropolitan Sewerage District in financing construction could well have persuaded the legislature to give sewerage districts with a first class city special treatment in funding capital improvements.

In any event the parties have not had the opportunity to argue this issue. The rational basis was not presented to the circuit court, and the parties did not consider the issue in setting forth their facts before the circuit court. The classification question became a significant issue when this court raised it. Under these circumstances, even if I were to accept the test the majority opinion sets forth, I would ask for additional briefs and argument on this important legal question or remand the case.

For the reasons set forth, I dissent.

I am authorized to state that JUSTICE DONALD W. STEINMETZ joins in this dissent.