CITY OF BROOKFIELD, Village of Butler, Village of Menomonee Falls, City of Mequon, City of New Berlin, Village of Elm Grove, Village of Germantown and Village of Thiensville, Petitioners-Appellants,†

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN, Respondent-Respondent,

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT, Miller Brewing, Inc., and Universal Foods Corporation, Respondents.

Court of Appeals

*No. 93–0608. Submitted on briefs November 11, 1993.—Decided June 22, 1994.*

(Also reported in 519 N.W.2d 718.)

†Petition to review denied.

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Michael G. Stuart, Wal-*

*ter Kuhlmann and Lawrie J. Kobza* of *Boardman, Suhr, Curry & Field* of Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Steven Levine* of the Public Service Commission of Wisconsin.

On behalf of respondent Milwaukee Metropolitan Sewerage District, the cause was submitted on the brief of *Allen W. Williams, Jr. and Michael D. Flanagan* of *Foley & Lardner* of Milwaukee, and of counsel *Michael J. McCabe, James H. Petersen and Harold B. Jackson, Jr.* of the Milwaukee Metropolitan Sewerage District.

On behalf of respondents Miller Brewing, Inc. and Universal Foods Corporation, the cause was submitted on the brief of *Robert V. Abendroth* of *Whyte & Hirschboeck, S.C.* of Milwaukee.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J.    The plaintiff municipalities appeal from a circuit court judgment affirming a Public Service Commission (PSC) order permitting the Milwaukee Metropolitan Sewerage District (MMSD) to charge the municipalities for the recovery of capital costs on the basis of taxable property value. The sole issue is whether MMSD's property value based method is permissible under § 66.91(5)(c), STATS. We hold that it is. Accordingly, we affirm.

This case continues the decade-long dispute between MMSD and municipalities outside of the district, collectively known as FLOW,[1] over FLOW's respective share of MMSD's annual capital costs. The

---

[1] FLOW stands for Fair Liquidation of Waste and includes the cities of Brookfield, Mequon and New Berlin and the villages of Butler, Elm Grove, Germantown, Menomonee Falls and

dispute centers around funding for MMSD's two billion dollar capital improvement program known as the Water Pollution Abatement Project (WPAP). Prior to 1984, the FLOW communities purchased wastewater treatment service from MMSD on a usage based formula. In anticipation of the construction of the new WPAP facilities, MMSD attempted to change to a property value based formula of recovering capital costs. The history of the parties' subsequent battles in the legislature and the courts is well documented and we need not recite it here.[2]

On January 17, 1989, Miller Brewing, Inc. and Universal Foods, Inc. filed a complaint with the PSC under § 66.912(5), STATS., in an effort to determine the previously unanswered question of the validity of the property value method.[3] Miller Brewing and Universal

Thiensville. The City of Muskego settled with MMSD during the course of this litigation.

[2] For additional factual history and related litigation *see City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 141 Wis. 2d 10, 414 N.W.2d 308 (Ct. App. 1987); *City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 144 Wis. 2d 896, 426 N.W.2d 591 (1988) ("*Brookfield I*"); *City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 171 Wis. 2d 400, 491 N.W.2d 484 (1992) ("*Brookfield II*").

[3] The complaint alleged that MMSD's rate structure did not include capital recovery costs to municipalities outside of the district for facilities currently in service and it was unreasonable and discriminatory for the entire burden of these charges to be placed only on customers residing within MMSD. The complaint also alleged that MMSD's failure to collect sewerage service charges from FLOW on a property value basis was unreasonable and discriminatory because only customers within the district would be paying capital recovery costs on a property value basis during the pendency of the action. The PSC declined to exercise jurisdiction over this part of the complaint

Foods are users of the sewerage system and are located inside MMSD's geographical boundaries. The PSC ultimately decided that the issue to be determined was "whether the Milwaukee Metropolitan Sewerage District's allocation methodology of charging outside contract communities for capital costs on the basis of property value is unreasonable."[4]

On January 24, 1991, the PSC decided that the property value method was not unreasonable or

because FLOW had previously commenced litigation challenging the property value based method, which was then under consideration by the circuit court for Waukesha county.

[4] In the year following the PSC's decision to investigate the complaint, a number of developments occurred. First, in the litigation pending in Waukesha county circuit court, *supra* note 3, the court held that § 66.076, STATS., did not authorize MMSD to charge for capital recovery costs on a property value basis. The jury in the case subsequently determined the reasonable value of services provided by MMSD to the municipalities for the years 1985-1988 calculated on a volumetric basis. The supreme court ultimately vacated the circuit court's judgment in part because it held that the court "should have deferred to the PSC for its determination of MMSD's statutory authority to charge for capital costs on the basis of property value formula and of the reasonableness of the charges." *Brookfield II*, 171 Wis. 2d at 424, 491 N.W.2d at 493.

Second, the legislature passed a bill authorizing MMSD to charge customers outside the district for capital recovery costs on a property value basis. *See* 1989 S,B. 65. Governor Thompson vetoed the legislation and encouraged the parties to reach a negotiated settlement or, in the alternative, that the PSC render a comprehensive decision. In response, the parties requested that the PSC not proceed with its investigation pending completion of negotiations. After a proposed settlement collapsed, a prehearing conference was held and the issue was broadened to determine whether the property value based formula was unreasonable or unjustly discriminatory.

unjustly discriminatory and that authority for such a method exists under § 66.91(5)(c)2, STATS. On January 7, 1993, the circuit court affirmed the PSC's order following FLOW's petition to review pursuant to § 227.53, STATS. FLOW appeals.

At the outset, the parties dispute the appropriate standard of review. FLOW argues that the issue involves the interpretation of § 66.91(5), STATS., and its application to a unique set of facts, both of which are questions of law that we review de novo. MMSD argues that the PSC's order is entitled to "great weight" because the legal questions are intertwined with factual determinations which are most appropriately decided by the agency.

■

It is true that the application of a legal standard to a set of facts presents a question of law and we generally need not defer to the administrative agency's decision in such cases. *City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 141 Wis. 2d 10, 14, 414 N.W.2d 308, 309 (Ct. App. 1987). "However, labeling the commission's determination a conclusion of law does not result in this court totally disregarding the commission's determination." *Id.*

Prior case law in this dispute has accurately set forth the appropriate deference to be given to the PSC's decision:

> While the interpretation of statutes (here determining MMSD's statutory authority) is ordinarily an issue within the expertise of the courts, in this case the statutes appear to be inextricably interwoven with issues of sewer service charges, rules and practices. Interpretation of the statutes in this case may require an understanding of certain concepts of utility law and of the charges, rules and

practices of sewerage districts, subjects within the expertise of the PSC. . ... While judicial review may be sought after a PSC decision, the administrative agency's analysis of the statutory issues will often aid the court in its decision-making process.

*City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 171 Wis. 2d 400, 423, 491 N.W.2d 484, 492-93 (1992).

The PSC ruled that MMSD's method of allocating capital costs to FLOW based on property values was reasonable and not unjustly discriminatory, *see* § 66.912(5), STATS., and was authorized by § 66.91(5)(c)2, STATS. Significantly, FLOW does not appeal the PSC's findings that the property value method was reasonable and not unjustly discriminatory. Instead, FLOW argues that § 66.91(5)(c) does not provide MMSD with the authority to charge on a property value basis in this case.

Section 66.91(5)(c)1, STATS., provides:

> Charges for sewerage service shall, to the extent practicable, be proportionate to the costs of the sewerage system that the district may reasonably attribute to the user.

FLOW argues that this language mandates that MMSD's charges be proportionate to the cost of providing service and that MMSD's property value based charges fail to meet this standard. FLOW contends that the PSC erred as a matter of law by failing to apply the proportionality standard. We disagree.

Contrary to FLOW's assertions, § 66.91(5)(c)1, STATS., does not impose a per se rule of proportionality. The language of § 66.91(5)(c)1 is not absolute. The statute requires charges to be proportionate to the costs of the system only *to the extent practicable* where the district may reasonably attribute the costs to the user.

Therefore, if it is determined that the costs in question cannot reasonably be attributed to the user, the statute does not mandate charges based on use.

The subject of the present dispute is charges for the capital costs of WPAP as opposed to operation and maintenance costs. The PSC concluded that the principal goal of WPAP was to ensure protection of public health and compliance with state and federal water quality standards, not to enhance capacity to meet expanding user demand. Therefore, such costs are not closely linked to usage because the WPAP "provides a public good' to the entire public rather than a private good which is limited to direct purchasers of the service." FLOW does not contest the PSC's conclusion that the capital costs associated with WPAP are unrelated to use. Since the capital costs are not attributable to the user, the proportionality requirement in § 66.91(5)(c)1, STATS., relied on by FLOW is not mandatory.

Further, FLOW's interpretation of the statute improperly focuses exclusively on § 66.91(5)(c)1, STATS. It is well established that a statute must be construed so that every portion of it is given effect and no part of it is rendered superfluous. *State ex rel. Briggs & Stratton Corp. v. Noll*, 100 Wis. 2d 650, 655, 302 N.W.2d 487, 490 (1981). Section 66.91(5)(c)2 states in relevant part:

> In computing charges, the commission may consider any reasonable factor, including wastewater flow or drainage, delivery flow characteristics, water consumption . . . population served, lot size, portion of lot improved and *assessed value of property served*. [Emphasis added.]

By this language the legislature expressly indicated that property value is a reasonable factor in computing charges. The fact that these non-usage factors are listed as permissible refutes the notion that charges must be strictly based on usage.[5]

It is significant to note that FLOW does not contest the PSC's ultimate finding that the property value method was not unreasonable. In effect, this undercuts much of FLOW's argument that the method nonetheless violates the statute. FLOW complains that the PSC did not address whether the property value based charges were proportionate to user costs and ignored evidence that showed the charges were "wildly disproportionate." This appears to be an attempt to circumvent the PSC's ultimate finding of fact that MMSD's method of recovery is not unreasonable or unjustly discriminatory. Regardless, we are unconvinced that the PSC erred as a matter of law or ignored any relevant statutory mandates in reaching its conclusions.

FLOW argues extensively that the legislative history surrounding MMSD's efforts to obtain authority for charging based on property values indicates that the legislature never intended MMSD to have such authority. Specifically, FLOW cites a proposed amendment to the enabling legislation that created MMSD and provisions adopted as part of the 1983 and 1985 budget bills, later held unconstitutional, which FLOW

---

[5] FLOW concedes that property value based charges and other reasonable factors may be considered under § 66.91(5)(c)2, STATS., but only if they meet the cost proportionality test of § 66.91(5)(c)1. Because we have concluded that proportionality is not required in cases such as this where the costs are not attributable to the user, FLOW's argument fails.

argues attempted to specifically grant MMSD the authority to base capital cost charges on a property value basis.[6] FLOW contends that such provisions indicate a recognition by the legislature that MMSD previously did not have such authority. We disagree.

In construing a statute, we resort to legislative history if, and only if, the statute is ambiguous. *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 201, 496 N.W.2d 57, 61 (1993). Where the language of a statute is unambiguous, our inquiry ends and we must simply apply that language to the facts of the case. *Id.* Because we have already concluded that the property value based charges are permitted in this instance by the plain language of § 66.91(5)(c), STATS., we do not consider the legislative history in this matter.[7]

---

[6] The provisions cited by FLOW, § 66.898(4)(c) and § 66.899 (1), STATS., were held to be unconstitutional because they were improperly passed as part of budget bills in violation of art. IV, § 18 of the Wisconsin Constitution. *See Brookfield I*, 144 Wis. 2d at 921, 426 N.W.2d at 602-03.

[7] Even were we to consider the legislative history, we would be unpersuaded by FLOW's arguments. First, the two provisions adopted by the legislature, *supra* note 6, were mandatory in that they required MMSD to charge outside district users for capital costs on a property value basis if district users are charged in that manner. The enactment of legislation mandating a property value charging scheme provides no indication as to whether previous legislation authorized such conduct. Regarding FLOW's reliance on language not adopted in the enabling legislation as evidence of the legislature's intent that it was not granting authority for MMSD to allocate capital costs on the basis of property values, we view such statutory interpretation to be risky. An equally plausible explanation why the language was not adopted is that the legislature believed that

FLOW also argues that § 66.076, STATS., controls this issue and does not authorize MMSD to charge for capital recovery costs on a property value basis. FLOW contends that it is illogical to interpret § 66.91, STATS., to allow property value based capital costs recovery when it is not permitted by § 66.076. The PSC expressly deferred consideration of MMSD's authority under § 66.076 since it determined that such authority exists under § 66.91(5)(c)2, "if nowhere else." Because we agree with the PSC that MMSD's use of property values in this case is permissible under § 66.91(5)(c), we decline to address whether such authority exists under § 66.076.[8]

*By the Court.*—Judgment affirmed.

the purpose sought to be achieved by the amendment was already contained in the bill.

[8] We note that FLOW subsequently petitioned the PSC to interpret the extent of MMSD's statutory authority under § 66.076, STATS. On December 1, 1993, after the present case was submitted to this court for decision, the PSC entered an order dismissing FLOW's complaint, concluding that MMSD is authorized by § 66.076 to charge FLOW for the recovery of capital costs using a property value based method.